Charles PRIESMEYER, Appellant,

v.

Stephen J. RUDY, Appellee.

Patent Appeal No. 8108.

United States Court of Customs
and Patent Appeals.

June 5, 1969.

———◇———

Albert H. Kirchner, Washington, D. C., Watson D. Harbaugh, Evanston, Ill., attys. of record, for appellant.

Stephen J. Rudy, pro se.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

WORLEY, Chief Judge.

This is an appeal from a decision of the Board of Patent Interferences awarding priority of invention to the junior party-patentee,[1] Rudy, in an interference with the application [2] of Priesmeyer.

The subject matter relates to hand-operated embossing devices, such as those used by notaries, intended to emboss indicia upon a sheet of paper and at the same time ink the uppermost raised portions of the embossed indicia to render them suitably visible for reproduction by photostat processes. The devices of both parties include opposed male and female dies with the female die having openings extending completely through it corresponding to the indicia to be embossed, and the male die having corresponding raised projections which enter the openings in the female die. Paper placed between the dies is pushed into the openings as they are pressed together until the uppermost portions of the embossed parts of the paper contact an inking pad situated on the remote side of the female die. Count 1 is representative:

1. In a hand-operated embossing device including a frame means having opposed jaws and a lever means pivotally supported by said frame means, a combination of elements comprising a pad holding assemblage movable by said lever means, a pair of embossing plates arranged for cooperative embossing action when clamped upon a sheet of paper, a first of said plates mounted upon the pad holding assemblage and having openings defining a given indicia pattern, the second of said plates having projections defining a like indicia pattern adapted to fit within the openings of the first plate *so that the clearance between any projection and the walls of an engaged opening is substantially equivalent to the thickness of the sheet of paper being embossed,* and an inking pad arranged in

---

1. U. S. Patent No. 3,514,010, filed April 16, 1962, issued October 27, 1964.

2. Serial No. 99,871, filed March 31, 1961 for "Print-Embossing Seal Press."

the pad holding assemblage whereby the paper being embossed will be forced by the projections into engagement with the inking pad and be inked thereby. [Emphasis added.]

Count 2 recites the additional limitation that:

\* \* \* said projections are of a height at least equal to the thickness of said first plate.

Count 3 is equivalent to count 1 insofar as the issues here are concerned.

The main issue[3] is whether Priesmeyer's application supports the limitation of the counts (emphasized above) concerning the clearance between the raised projections and the walls of the engaged openings as being substantially equivalent to the thickness of the paper being embossed. The following background information will facilitate understanding of the board's decision on that issue.

Rudy discloses an embossing device in which the female die has perforations with straight, non-tapering sides and the male die has projections with straight, non-tapering sides and a rounded top, as illustrated in Figures 3 and 4 below:

The specification states:

A male die plate 32 is mounted upon the lower jaw 12, which plate has an assortment of projections 34, arranged to provide a raised indicia seal pattern similar to that made by the perforations of plate 26, which raised indicia slidingly fit in comparable perforations 28. The height of the raised indicia is at least equal to the thickness of the plate 26.

It will be seen that when a sheet of paper 36 is placed between the die plates 26 and 32 and the pad holding assemblage is moved downwardly to clamp the paper between the plates, the raised indicia 34 will force paper into the perforations 28, to create an embossed pattern in accordance with the design in the plates. The raised indicia 34, being of a height at least equal to the thickness of the plate 26, causes the upper extremity of the embossments on the paper, to contact the pad 24, and to thus be inked thereby (Fig. 4). \* \* \*

Priesmeyer discloses an embosser in which the female die has tapered, straight-sided openings. The raised characters or projections of the male die are stated to be a "mating die" and apparently have a corresponding taper. The Priesmeyer application as filed did not include any drawings in which the

---

3. A second issue determined by the board, whether Priesmeyer's application supported the limitations of the second count concerning the relationship of the projections to the thickness of the plate, need not be considered here in view of our decision concerning the main issue.

raised projections of the male die were shown. The most relevant figure, Figure 4, shows the tapered walls of the openings 70 in the female die [4]:

FIG. 4

The pertinent portion of Priesmeyer's application reads:

> Having formed the desired recessed characters of the seal on one side of the die, the porous member is saturated with a pigmented fluid, preferably a fluid which maintains a constant viscosity over a long period of time, by insertion through the opening 68 into the channel 64. When the saturation point is attained, the die is then placed in the releasably rotating die holder 41. A mating die, not shown, having raised characters formed thereon, is formed and positioned in the other die holder of the die assembly and when it is desired to form the seal on a paper, the paper is disposed between the two die units and the dies are brought together. As the paper is forced upwardly by the action of the raised characters of the one die entering mating recessed characters of the die of this invention, the desired embossing is accomplished. As the raised characters bottom in the mating recessed characters, the paper sandwiched therebetween is brought into contact with the fluid-saturated porous member 60. * * *

After the interference was instituted, Rudy moved to dissolve on the ground

4. After the issuance of the Rudy patent, Priesmeyer submitted an amendment copying claims from the Rudy patent and simultaneously requested his drawings be changed to show the tapered projections of the male die in Figure 4 as follows:

FIG. 4

It is not clear from the record whether that change in the drawings was ever entered in the application. In addition, appellee argues the drawing changes are inadmissible as new matter. Since the drawing changes, even if entered, could only avoid the charge of "new matter" if they merely illustrated what was inherently disclosed in the application as filed, we feel the correct approach here is to conduct our inquiry on the basis of the original disclosure of Priesmeyer as filed.

that Priesmeyer's disclosure did not support the counts because it lacked, inter alia, a disclosure of a clearance between the projections and the walls of the engaged openings substantially equivalent to the thickness of the paper being embossed. The examiner denied the motion, citing several exemplary patents for the proposition that the recited clearance limitation was old in the embossing art. He stated:

> * * * Dwyer, Allison and Evans each show that it is well known in the art to make the clearance between the projection on the male die and the walls of a corresponding opening in a female die substantially equivalent to the thickness of the sheet being embossed * * *. Since an applicant is not required to redescribe, in detail, those things which are already well known to those skilled in the art, there is adequate support in the Priesmeyer application for every limitation in each of the three counts of this interference.

The board disagreed with the examiner, stating:

> * * * In fact, while the rationale of the decision on motions is not entirely clear to us, it appears that the Primary Examiner concluded merely that the person skilled in the art *could, without invention,* construct the embossing device as defined. As noted above, that is not the proper test; the proper test is whether, in following Priesmeyer's instruction that device would necessarily be produced.

Turning to the matter of clearance, the board went on:

> * * * Since the male and female members of Priesmeyer are "tapered" and "mating," the space between them will vary from a very wide spacing as they approach each other until actual contact is established, either by contact along the tapered walls, or by the top of the male die projection abutting the bottom of the inking member. Thus the requirement in the counts of a defined fit and clearance between the projections and openings is meaningless as applied to the tapered Priesmeyer construction.

> To provide the fit and clearance required, Priesmeyer relies upon the spacing effected by the paper being operated upon as though the paper were itself a part of the embossing device. To base support on this aspect is unsound both in law and in logic * * *.

> *Priesmeyer states in his own brief * * * that there is no clearance between the tapered sides of his male and female dies when paper is absent.* If this is true, he has no support for the limitation of clearance fit common to all three counts. * * * We conclude that there is no disclosure by Priesmeyer of the clearance fit feature, * * * [Emphasis supplied.]

Here appellant argues that the clearance limitation of the counts is not significant to patentability in view of the prosecution history of the Rudy patent, and does not therefore merit a strict interpretation, citing Henderson v. Grable, 339 F.2d 465, 52 CCPA 920 (1964). There we stated:

> * * * Moreover, it is plain that there is no relationship necessary to the patentable concept of the subject matter of the counts that requires a strict interpretation of the term "integral." Rather it is our opinion that the circumstances here require that the unambiguous term "integral" be given the broadest construction the language will reasonably bear without resort to the specification from which it originated * * *.

Although appellant draws our attention to the above-quoted portion of *Henderson,* we feel he has in effect placed undue reliance on the first sentence without sufficient regard for the second. We must, in the words of *Henderson,* examine the expression "clearance" to see "whether a reasonable interpretation, but one not so broad as to do violence to the language" would include the Priesmeyer structure. The present situation

is also governed by Segall v. Sims, 276 F.2d 661, 47 CCPA 886 (1960), where we stated:

> When an applicant copies a claim from a patent, he must show that he is entitled to make the claim. All limitations in the copied claim will be considered *material* in determining applicant's right to make the claim, and doubts arising as to applicant's right to make the claim must be resolved against him. * * * [Emphasis supplied.]

It is in that context that we consider appellant's argument that, even if the clearance limitation be given a strict construction, his disclosure satisfies the limitation, stating:

> Appellant's disclosure obviously provides a clearance as defined for paper when it is being embossed * * * which satisfies the counts, but the Board holds that since Appellant describes his die characters as tapered, the apparent lack of clearance therebetween when the dies are *closed empty* is significant on the question of supportability because the Board interprets that the undescribed "straight sided" die elements, shown only in the Rudy drawing, do have clearance when they close empty as well as when they have paper between them and the word "clearance" is to be so construed.

5. For example, Webster's International Dictionary of the English Language, 2nd Edition, 1954:
   clear * * *
      4. A clear space or part * * *
      b. clearance; unobstructed space
   clearance * * *

Insofar as appellant may be understood to be arguing that the necessary "clearance" in his device exists when the dies are closed upon the paper, it appears to us that such an interpretation, be it strict or liberal, would do violence to the ordinary, reasonable meaning of the word "clearance," which is usually understood to denote an intervening space which is unobstructed.[5] We fail to see where else in Priesmeyer's specification there may be found support for the count limitation "that the clearance between any projection and the walls of an engaged opening is substantially equivalent to the thickness of the sheet of paper being embossed." Certainly no such relationship is illustrated in Figure 4 as filed, and the specification does not explicitly describe any particular clearance relationship between the raised characters and the mating recessed characters. Moreover, as Rudy points out, it should be noted that Priesmeyer's device, because of the tapered configuration of his interfitting die members, does not depend upon or actually require clearance between the die members to prevent shearing or rupturing of the paper.

Thus, we conclude, as did the board, that there is no disclosure by Priesmeyer of the clearance limitation of the counts.

The decision is affirmed.

Affirmed.

1. Act of clearing, or freeing from obstruction * * *
   *     *     *     *     *
3. The distance by which one object clears another, or the clear space between them.