57 CCPA

**Application of BEATRICE FOODS CO.**

**Application of FAIRWAY FOODS, INC. Patent Appeal Nos. 8294, 8295.**

United States Court of Customs and Patent Appeals.
Aug. 6, 1970.

John C. L. Cowen, Harness, Dickey & Pierce, Detroit, Mich., for appellant, Beatrice Foods Co.

Arthur S. Caine, Minneapolis, Minn., for appellant, Fairway Foods, Inc.

Donald A. Kaul, Roylance, Abrams, Kruger, Berdo & Kaul, Washington, D. C., amicus curiae.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Charles A. Marlow, Jr.,. Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This represents the first occasion on which this Court has been asked to review a decision of the Trademark Trial

and Appeal Board in a Concurrent Use Proceeding instituted under § 2(d) of the Lanham Trademark Act, 15 U.S.C. § 1052(d).[1] Both parties to the proceeding below,[2] which involved two copending applications, have taken separate appeals from the board's several decisions.[3] We have considered each party's position independently, but since both appeals arise from the same proceeding and the parties have submitted a joint record, we shall dispose of the issues in both appeals in a single opinion.

Many of the facts before us were stipulated in a statement filed jointly by both parties under Rule 25 of this Court. The pertinent facts include the following:

Beatrice Foods Co., appellant in PA 8294, is a Delaware corporation having its home office in Chicago, Illinois. Beatrice is a manufacturer and processor of food products, distributing its goods through sales to wholesalers and retail chain supermarkets. Through its wholly-owned subsidiary, Shedd-Bartush Foods, Inc., of Michigan, Beatrice has marketed, since 1953, one-pound packages of oleomargarine under the brand name "Homestead."

Fairway Foods, Inc., appellant in PA 8295, is a Minnesota corporation, having its home office in St. Paul, Minnesota. Unlike Beatrice, Fairway is only a wholesaler or distributor of food products, whose stockholders are retailers operating indidually-owned grocery stores or supermarkets under the tradename "Fairway" or "Super Fair". Since 1956, it has used the trademark "Homestead" for dairy products, including butter, milk, ice cream and eggs, and, since 1963, for a large variety of baked goods, all produced under its sponsorship.

On June 18, 1962, Fairway (hereinafter referred to as prior applicant) filed an application[4] to register its mark "Homestead" for dairy products on the Principal Register. That application was examined and, in due course, was found to be entitled to registration and published for opposition purposes. Beatrice Foods Co. (hereinafter referred to as prior user), filed an opposition[5] alleging prior use of the identical mark for oleomargarine.

In an attempt to settle their differences each party being satisfied that the other had registrable rights, the parties drew up an agreement geographically dividing the nation into two territories and each agreeing to recognize and honor the other's exclusive rights within its territory. In partial execution of this agreement, the prior applicant amended its application to set forth, as an exception to its right to exclusive use of the mark, the right of Beatrice Foods to the same mark in specified geographical areas of the United States. Prior user, not having previously owned a federal

---

1. The pertinent part of that section is the proviso, which reads as follows:
 [W]hen the Commissioner determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks or the goods in connection with which such marks are used, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce prior to (i) the earliest of the filing dates of the applications pending or of any registration issued under this act. * * * In issuing concurrent registrations, the Commissioner shall prescribe conditions and limitations as to the mode or place of use of the mark or the goods in connection with which such mark is registered to the respective persons.

2. Concurrent Use Proceeding No. 294, instituted June 17, 1966.

3. The board adhered to its original decision (with one exception regarding the party Beatrice Foods Co., which will be explained later) in two separate opinions denying requests for reconsideration by both parties. None of the opinions is reported.

4. Serial No. 147,094.

5. No. 43,634, February 11, 1964.

registration or any application therefor on its mark, now filed an application,[6] similarly setting forth, as an exception to its right to exclusive use of its mark, the right of Fairway Foods, Inc. to use the mark in certain specified geographical areas of the United States. This concurrent use proceeding was thereafter instituted and the opposition proceeding was suspended pending its outcome.

The parties at first filed a stipulation waiving the taking of testimony and submitting in lieu thereof their indicated agreement as to their rights to the concurrent registrations as they had geographically restricted them. Prior applicant had restricted its application to embrace the area comprising the states of Wisconsin, Minnesota, Iowa, South Dakota, North Dakota, certain counties comprising the eastern portion of Montana, and that area of Michigan, called the Upper Peninsula, which is contiguous with the State of Wisconsin and separated from the rest of the state by the Straits of Mackinac. Prior user claimed the area comprising the remainder of the United States.

The stipulation was not accepted, however, a member of the board, in a separate letter, stating that the parties would have to submit affirmative proofs. "Parties involved in a proceeding of the instant type," the letter stated, "are adverse parties and they may not by agreement resolve a question which this Office has the responsibility to determine." The parties were permitted, nevertheless, to submit their evidence by way of verified showings rather than by regular testimony, and they thereafter did so.

The Trademark Trial and Appeal Board, in its first opinion, found the evidence submitted by each party to be insufficient "to establish rights in the mark in each and every one of the areas set forth in their respective applications for registration." With regard to prior applicant, it was noted that while an intention of expanding into the Upper Peninsula of Michigan and the eastern portion of Montana had been expressed, there was no evidence to support an assertion of rights in those areas. Similarly, it was held .that, since prior user had only shown evidence to support established rights in some 18 states, it was not entitled to claim rights in the remainder of the United States. Registration to both parties was refused until the parties restricted their applications "to those states with respect to which it is indicated that a satisfactory showing has been made."

The party Beatrice, the prior user, requested reconsideration, arguing, first, that its proofs had shown actual use of its mark in 23 states and not 18 (three of these states comprised areas in which Fairway had also used its mark and which had been included in the "Fairway Territory" as part of the parties' agreement), and, second, that its request for the remainder of the United States was supported by prior decisions holding that a prior user is entitled to a registration covering the entire country less the area in which the other party had established rights prior to the earliest filing date.

The board amended its earlier opinion so as to indicate that prior user had established rights in 20 states,[7] but adhered to its decision refusing to permit registration until the application was restricted to those 20 states, holding that the earlier cases upon which prior user had relied were superseded by the decision in Coastal Chemical Co. v. Dust-A-Way, Inc., 263 F.Supp. 351 (W.D.Tenn. 1967). That case was stated to have ruled that parties to a concurrent use proceeding are entitled to registrations which must be restricted geographically

6. Serial No. 213,648, filed March 9, 1965.

7. No explanation was given by the board as to why it awarded the three states in which both parties had established use to the party Fairway, the prior applicant. Apparently, it was willing to accept the parties' agreement at least insofar as it provided for award of those states to Fairway.

to those areas in which the marks involved have actually been used.

The party Fairway, the prior applicant, also petitioned for reconsideration, submitting an affidavit of its president in further support of its position that the two areas which the board refused to include in its area of established rights were areas of probable and imminent expansion and that the agreement between the parties "was a serious undertaking" and should be given effect. That affidavit showed, inter alia, that Fairway was currently actively planning expansion of its market into Montana and that, by reason of a number of outlets located relatively close to the Montana state line, its mark had more than likely already reached that state. With regard to the Upper Peninsula of Michigan, the affidavit showed that Fairway had had outlets in that area before the current dispute arose, although it had not used the mark in issue there, but that it had withdrawn entirely from the state of Michigan in accordance with the agreement of the parties. It was only when it became aware that Beatrice, the prior user, had not used its mark in the Upper Peninsula, that it prevailed upon Beatrice to amend the agreement incorporating that area as part of the "Fairway Territory".

In a third opinion, the board responded to Fairway's arguments by reiterating the statement that parties to a concurrent use proceeding may not by mere agreement resolve a question which must be decided by the Patent Office, citing Ex parte Chadbourn Hosiery Mills, Inc., 107 USPQ 12 (Comm'r.Pat. 1955). Thus, it held that the subsequent modification of the agreement between the parties did not serve to confer any registrable rights upon Fairway in the Upper Peninsula. With regard to the showing of subsequent business activity in Montana, it was further held

that this also provided no basis for the recognition of rights sufficient to warrant registration since "any rights claimed by a party in a mark must have been in existence at the time of the filing of its application for registration."

### No. 8294

Beatrice Foods Co., the prior user, has appealed from the decisions of the board refusing to permit its registration to cover that portion of the United States lying outside both the territory of Fairway and the area where Beatrice had made actual use of the mark prior to filing its application. The issue here, simply stated, is the correctness of the board's holding that "parties involved in a concurrent use proceeding in the United States Patent Office are entitled to registrations which are limited to those areas only in which the marks involved have actually been used." In so holding, the board indicated that it was following what it considered to be the ruling of the court in Coastal Chemical Co. v. Dust-A-Way, Inc., supra.[8]

The position taken by the board in this case is obviously inconsistent with the practice of granting unrestricted registrations in cases where there is only a single applicant, and must therefore find support and justification, if at all, in the language of the proviso to § 2(d) or in some policy surrounding the proviso which differs from that behind the rest of the Lanham Act upon which the practice of granting unrestricted registrations in all other cases is based.

Looking first at the language of the proviso, we find that it sets out two requirements for the issuance of concurrent registrations for the same or similar marks to more than one person: first, such persons must "have become entitled to use such marks as a result of their concurrent lawful use in commerce prior to (i) the earliest of the filing

---

8. It has been brought to our attention that the Patent Office tribunals apparently no longer hold to this position, since, in decisions handed down subsequent to the one at bar, a different course has been followed. See Clause v. Trim-Twist, Inc., 160 USPQ 557 (TTAB 1968), 160 USPQ 558 (Comm'r.Nat.1969); Blanchard Importing & Dist. Co. v. Davis Sherman Corp., 161 USPQ 799 (TTAB 1969).

dates of the applications pending," (emphasis added); and, second, it must be determined "that confusion, mistake, or deception is not likely to result from the continued use" of the marks by such persons. When it is determined that the likelihood of confusion, mistake or deception will be avoided only "under conditions and limitations as to the mode or place of use of the marks or the goods in connection with which such marks are used", the Commissioner is empowered to prescribe such conditions and limitations "with which such mark is registered to the respective persons."[9] We find nothing in the language of the proviso which, per se, *requires* the result reached by the board in this case.

■ Considering now the policy behind this provision of the act, it is our view that the proviso reflects a recognition, by the framers of that statute, that occasions do and will arise, where two or more persons will independently adopt the same or a similar trademark and use it under the same or similar circumstances, and indicates their concern that a mechanism be provided for an equitable resolution of the problems which such concurrent use creates. As we see it, this is nothing more than an application of the basic policies underlying the Lanham Act as a whole.[10]

■ It should be emphasized that what the parties here are seeking, and what the statute, in the proviso to § 2(d), authorizes, are concurrent federal *registrations*. Much confusion can be avoided by recognizing that such registrations would not, in and of themselves, create any new right to *use* the trademark or to assert rights based on ownership of the trademark itself. Rights of trademark ownership, for example, the right to enjoin another from use of the mark, must be based upon actual use and can be enforced only in areas of existing business influence (i. e., current use or probability of expansion). United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918); Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916). It is now well settled that the Lanham Act did not alter this aspect of the prior law. See American Foods, Inc. v. Golden Flake, Inc., 312 F. 2d 619 (5th Cir. 1963); Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959).

■ Rights appurtenant to the ownership of a federal trademark registration, on the other hand, may be considered supplemental to those recognized at common law, stemming from ownership of a trademark. A federal registration gives certain procedural rights, such as the right to invoke jurisdiction of the federal courts (15 U.S.C. § 1121), and the right to rely on certain evidentiary presumptions (15 U.S.C. § 1115), but more importantly, the constructive notice provision of § 22 of the Lanham Act (15 U.S.C. § 1072), takes away from future users of the mark registered the defense of innocent appropriation. The owner of a federal registration now has the security of knowing that no one else may, henceforth legitimately adopt his trademark and create rights in another area of the country superior to his own. In this respect, this provision of § 22 is, perhaps, the best example of the intent of Congress to provide for a thriving business environment by granting na-

---

9. See also 15 U.S.C. § 1068, which spells out this authority even more clearly.

10. It is stated in the legislative history of the act that the purpose behind the Lanham Act, as with any trademark act, is a double one: *first*, to protect the public by enabling the consumer to distinguish between competing goods and by preventing the false marking of goods so he may thus be confident that he always will get the product he asks for and wishes to receive; and *second*, to protect the owner of the trademark, who has invested time, energy and money in presenting his product to the public and generating the goodwill which the trademark signifies, from its misappropriation. See H.R.Rep. No. 219, 79th Cong. 1st Sess. 2 (1945), S.Rep.No.1333, 79th Cong. 2d Sess. 3 (1946). The proviso to section 2(d) adequately serves that policy.

tionwide protection to expanding businesses.[11] It is the right to have this protection which the party Beatrice is, in effect, seeking through this appeal. As urged by Beatrice, it would be illogical and inconsistent with the objectives of the Lanham Act, not to provide for nationwide coverage where there is more than one registration—provided there will be no public confusion created thereby. The constructive notice provision of § 22 of the act was promulgated with the hope of cutting down on the number of instances of concurrent use and the uncertainty and confusion attached thereto. See Halliday, Constructive Notice and Concurrent Registration, 38 Trademark Rep. 111 (1948). Leaving territory open, as does the requirement by the board in this case, would frustrate this policy and increase rather than reduce the possibility of confusion and litigation.

The foregoing is not intended to imply that the Patent Office is required to issue registrations covering the whole of the United States in all circumstances. Certainly the applicant or applicants may always request territorially restricted registrations.[12] In addition, in carrying out the Commissioner's duty under the proviso of § 2(d) of determining whether confusion, mistake or deception is likely to result from the continued concurrent use of a mark by two or more parties, it may be held that such likelihood will be prevented only when each party is granted a very limited territory with parts of the United States granted to no one.

■■ We earlier pointed out the two requirements which the proviso sets out as conditions precedent to the issuance of concurrent registrations. The first, that the parties be presently entitled to concurrently use the mark in commerce, we view as being primarily jurisdictional in nature. As with a single applicant, we consider the extent of such actual use to be irrelevant so long as it amounts to more than a mere token attempt to conform with the requirement of the statute. Cf. Fort Howard Paper Co. v. Kimberly-Clark Corp., 390 F.2d 1015, 55 CCPA 947 (1968). The touchstone, however, is the requirement that there be no likelihood of confusion, mistake or deception in the market place as to the source of the goods resulting from the continued concurrent use of the trademark. Only in satisfying this standard, can the Patent Office be sure that both the rights of the individual parties and those of the public are being

11. The legislative intent is perhaps best expressed in the following language appearing in both the House and Senate Reports accompanying the bills which were finally enacted:

[T]rade is no longer local, but is national. Marks used in interstate commerce are properly the subject of Federal regulation. It would seem as if national legislation along national lines securing to the owners of trade-marks in interstate commerce definite rights should be enacted and should be enacted now.

There can be no doubt under the recent decisions of the Supreme Court of the constitutionality of a national act giving substantive as distinguished from merely procedural rights in trade-marks in commerce over which Congress has plenary power, and when it is considered that the protection of trade-marks is merely protection to good will, to prevent diversion of trade through misrepresentation, and the protection of the public against deception, a sound public policy requires that trade-marks should receive nationally the greatest protection that can be given them. H.R.Rep.No.219, 79th Cong. 1st Sess. 4 (1945) ; S.Rep.No.1333, 79th Cong. 2d Sess. 5–6 (1946).

We, of course, are not the first Court to have recognized this intent of the Congress. See, e. g., John R. Thompson Co. v. Holloway, 366 F.2d 108 (5th Cir. 1966) ; Sterling Brewing, Inc. v. Cold Spring Brewing Corp., 100 F.Supp. 412 (D.Mass.1951).

12. In fact, the actual holding of the District Court in the *Coastal Chemical Co.* case, *supra*, may be looked upon as merely limiting the parties to what they had originally agreed to, i. e., registrations restricted to their areas of actual use, thus applying the long-standing rule of equity that a party should not be given more than he originally seeks.

protected. Once there has been a determination that both parties are entitled to a federal registration, the extent to which those registrations are to be restricted territorially must also be governed by the statutory standard of likelihood of confusion.

■■■ We have concluded that in concurrent use proceedings in which neither party owns a registration for the mark, the starting point for any determination as to the extent to which the registrations are to be territorially restricted should be the conclusion that the prior user is prima facie entitled to a registration covering the entire United States. Such a prior user, who applies for a registration before registration is granted to another party, is entitled to a registration having nationwide effect no less than if there were no concurrent user having registrable rights.[13] His rights and, therefore, his registration, should be limited only to the extent that any other subsequent user, who can establish the existence of rights earlier than the prior user's application for registration, can also prove a likelihood of confusion, mistake or deception.

■■■ Having decided that, once jurisdiction is settled by way of the parties' establishing prior concurrent use, the primary concern of the Patent Office, in determining whether and to what extent registrations are to be granted, is to be the avoidance of any likelihood of confusion, we see no reason why agreements such as that worked out by the parties here should not be considered. Unques-

tionably, such stipulations are never binding on the board. Nevertheless, if it can be determined that they are in good faith, there can be no better assurance of the absence of any likelihood of confusion, mistake or deception than the parties' promises to avoid any activity which might lead to such likelihood.

■■■ It is not to be inferred that the Patent Office should blindly adhere to any agreement or territorial stipulation made by the parties. Such arrangements should always be critically appraised. But the practical value of accepting agreements such as this, when made in good faith, should be apparent. We see no reason why they should not be given effect when it is plain that the statutory requirement of assuring the avoidance of confusion, mistake or deception is satisfied thereby. Compare In re National Distillers and Chemical Corp., 297 F.2d 941, 49 CCPA 854 (1962); In re Fleet-Wing Corp., 188 F.2d 476, 38 CCPA 1039 (1951).[14] Surely, the action taken by the board in this case, i. e., merely restricting the parties to areas of actual use, provides little, if any, more assurance.

In summary then, we hold that the Trademark Trial and Appeal Board was in error in deciding that appellant Beatrice is entitled only to a registration restricted to the territory in which actual use prior to the earliest filing date was established. Its decision to that effect must, accordingly, be reversed. However, since it appears from the record before us that the board made no deter-

---

13. On the other hand, where the prior user does not apply for a registration before registration is granted to another, there may be valid grounds, based on a policy of rewarding those who first seek federal registration, and a consideration of the rights created by the existing registration, for limiting his registration to the area of actual use and permitting the prior registrant to retain the nationwide protection of the act restricted only by the territory of the prior user. See the opinion of Asst. Commissioner Fay in Coastal Chemical Co. v. Dust-A-Way, Inc., 139 USPQ 208 (1963). See also, Schwartz, Concurrent Registration Under the Lan-

ham Trademark Act of 1946: What is the Impact on Section 2(d) of Section 22?, 55 Trademark Rep. 413 (1965).

14. Of course, we are not here dealing with agreements wherein one party, a prior registrant, merely gives consent to the other party to register his mark. Compare In re Continental Baking Co., 390 F.2d 747, 55 CCPA 967 (1968); In re Wilson Jones Co., 337 F.2d 670, 52 CCPA 805 (1964). In this regard, see Derenberg, The Twenty-First Year of Administration of the Lanham Trademark Act of 1946, 58 Trademark Rep. 609, 633 (1968).

mination as to the question of likelihood of confusion, mistake or deception as required under the statute, this case is remanded for proceedings not inconsistent with the foregoing opinion.

### No. 8295

Appellant, Fairway Foods, Inc., the prior applicant, appeals from the board's refusal to permit its registration to cover the Upper Peninsula of Michigan and the eastern counties of Montana. For the reasons fully set forth in our opinion in No. 8294, the board's decision with regard to Fairway must also be reversed and the case remanded.

Because of the importance of the issues, however, and the fact that this case is one of first impression in this court, we will comment on the questions as to what circumstances, if any, short of actual use of the trademark, may create rights in a territory sufficient to warrant inclusion of that territory in a geographically restricted registration, and up to what time prior to registration may proof regarding the territorial extent of trademark rights be submitted. It will be remembered that Fairway asserted, on behalf of its rights to the contested areas, previous business activity, dominance of contiguous areas, a history of expansion, presently planned expansion into the two areas, and possible present penetration into Montana by way of goods bought in the Dakotas. It should also be noted that some of the activity relied on by Fairway occurred subsequent to its filing date. The board, in its decision, stated the requirements to be no less than *actual* use *prior* to the earliest filing date. We think both requirements are wrong.

■ The Commissioner of Patents has the statutory responsibility to make sure that concurrent registrations are limited so as to prevent the likelihood of confusion, mistake or deception from occurring. Where a party has submitted evidence sufficient to prove a strong probability of future expansion of his trade into an area, that area would then become an area of likelihood

of confusion if a registration covering it was granted to the other party. For example, many forms of evidence which would ordinarily be proffered to show a likelihood of *expansion* would be the same kind submitted to argue a likelihood of *confusion* if another party began use of the mark in that area. Thus, based on the premise that territorially restricted registrations must issue and, further, that said registrations combined will encompass the entire United States, if a likelihood of confusion is to be avoided, the territories of the parties must be limited in such a way as to exclude from each the area of probable expansion of the other party. Considering the Commissioner's indicated responsibility, which, of course, is based on a desire to protect the public, submission of evidence such as that submitted by Fairway in this case should be encouraged. And reiterating what was said earlier, any attempt, by the parties themselves, to solve the problem of public confusion, should be given serious consideration by the Patent Office.

■ With regard to the question as to the time prior to which evidence of trademark usage must be established, we have already indicated that the board was in error. Nothing in the statute is apparent which requires that the filing date of an application for registration is the cut-off day for establishing rights by a showing of trademark use. The *fact* of trademark use in commerce, is, as we pointed out earlier, merely necessary to invoke the jurisdiction required to adjudicate the controversy. The *extent* of such use is important only in that it is necessary to consider in determining the rights to be granted each party.

While it has not been cited or relied upon by the parties or by the Patent Office in the proceedings below, *Amicus* has brought it to our attention that the position expressed by the board finds support in the early case of Flintkote Co. v. Merriam & Co., 88 USPQ 390 (P. O., Exr. in Ch.1951) wherein it was stated that the Patent Office could not

consider use subsequent to any of the filing dates of the concurrent use applications.

 We cannot subscribe to this position. The extent to which concurrent registrations must be territorially restricted has an effect on the rights of both parties. In addition, there is the paramount interest of the public to be considered. We feel, therefore, that it is both necessary and proper for the Patent Office to determine the "conditions and limitations" with which the marks are to be registered "on the basis of facts as they exist at the time when the issue of registrability is under consideration." See McCormick & Co. v. Summers, 354 F.2d 668, 53 CCPA 851, (1966). Compare in re Thunderbird Products Corp., 406 F.2d 1389, 56 CCPA 969 (1969). In the present type of proceeding this would apparently mean up to the close of the testimony period. We have considered the possible problems which might result from such practice, but find they are outweighed by the interests involved.

### Summary

The decisions appealed from in both appeals are reversed and the cases remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.