RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0153P (6th Cir.)
File Name: 01a0153p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ALLARD ENTERPRISES, INC.,
     *Plaintiff-Appellant,*

     *v.*

ADVANCED PROGRAMMING
RESOURCES, INC.; BARRY
HEAGREN,
     *Defendants-Appellees.*

No. 99-4402

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 96-00870—John D. Holschuh, District Judge.

Argued: December 6, 2000

Decided and Filed: May 8, 2001

Before: MERRITT, KENNEDY, and BATCHELDER,
Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Gail L. Morrissey, STANDLEY & GILCREST,
Dublin, Ohio, for Appellant. Joanne S. Peters, ISAAC,
BRANT, LEDMAN & TEETOR, Columbus, Ohio, for
Appellees. **ON BRIEF:** Gail L. Morrissey, STANDLEY &

1

GILCREST, Dublin, Ohio, for Appellant.  Joanne S. Peters, Timothy E. Miller, ISAAC, BRANT, LEDMAN & TEETOR, Columbus, Ohio, for Appellees.

———————

**OPINION**

———————

KENNEDY, Circuit Judge.   Plaintiff-appellant Allard Enterprises, Inc. originally brought suit against defendant-appellee APR alleging, inter alia, federal trademark infringement. Defendant Advanced Programming Resources, Inc. filed related counterclaims.  Both parties sought exclusive rights to use the "APR" mark.  The district court found that defendants used the mark first and issued a nationwide injunction enjoining plaintiff's use of the mark.  On appeal, the Sixth Circuit affirmed the district court's priority determination as to first use but remanded to the district court to make findings and issue an order granting the appropriate geographic scope of injunctive relief.  On remand, the district court cancelled plaintiff's federal registration and ruled that defendants had prior common law rights in the mark throughout the state of Ohio.  Plaintiff Allard now appeals, alleging that the district court erred in (1) granting a new trial to hear evidence on the geographic scope of the prior use of the mark, (2) permitting defendants to amend their answer to include the counterclaim for cancellation of plaintiff's registration, (3) concluding that defendants had superior rights in the mark throughout all of Ohio, and (4) finding that plaintiff had not acquired any common law rights in its APR of Ohio mark outside of Ohio.

For the reasons stated below, we affirm the district court's decision to grant a new trial. We reverse the district court's decision to permit amendment of defendants' counterclaim and we therefore reinstate plaintiff's federal registration. We affirm the district court's ruling that defendants have exclusive rights to use the mark in central Ohio but vacate the

district court's priority determination as to the rest of Ohio and remand to the district court for a priority determination, consistent with this opinion, as to the rights of the parties throughout Ohio and throughout the rest of the United States.

## I.

The lengthy factual background of this case is laid out in more detail in the district court's opinions and in this court's previous opinion, but a brief overview follows. In the early 1980s, defendant Barry Heagren owned half of the stock of Advanced Programming Resolutions, Inc. (old APR), a company that placed employees in computer and data processing jobs and used the mark "APR" in connection with its services. Old APR was bought by a company called AGS, and after a two year buyout period, AGS discontinued its use of the APR mark in December 1988. Heagren and Charles Allard both worked for AGS. On January 31, 1989 Heagren incorporated a new company called Advanced Programming Resources, Inc. (new APR or defendant APR), but continued to work for AGS. Keane, Inc. then purchased AGS. Charles Allard left AGS and he and his wife incorporated Allard Enterprises, Inc. (Allard or plaintiff) on January 20, 1994 and registered "Allard Programming Resources, Inc." as a trade name with the state of Ohio. Allard unsuccessfully tried to register the name "APR" but it was already registered to AGS. On April 29, 1994, Allard successfully registered the trade name "APR of Ohio" with the state of Ohio.

Heagren, believing incorrectly that new APR owned the rights to the APR mark, advised Charles Allard by letter that new APR felt that Allard's use of the mark "APR of Ohio" infringed on new APR's protected use of the APR mark. In response, Allard filed an application, dated March 30, 1995, with the United States Patent and Trademark office for federal registration of its APR of Ohio service mark, claiming that it first used the mark in connection with its services "at least as early as April 30, 1994." On September 17, 1996, the service mark "APR of Ohio" was registered to Allard on the principal

register of the Patent and Trademark Office. Meanwhile, Heagren learned that the service mark APR was actually registered to AGS, not to new APR. Heagren tried unsuccessfully to register APR and "APR of Ohio" with the state of Ohio.

Plaintiff Allard brought this action in the United States District Court for the Southern District of Ohio, alleging federal trademark infringement, false designation of origin, common law trademark infringement, unfair competition, and deceptive trade practices. Defendants Heagren and APR counterclaimed alleging false designation of origin, common law service mark infringement, unfair trade practices, and deceptive trade practices under state law. Both parties sought injunctive relief preventing the other from using the service mark.

As a result of the original trial in this case, the district court held that defendants had established use of the APR service mark prior in time to plaintiff's use and had overcome the presumption established by plaintiff Allard's federal registration of the mark. As a result, the district court issued an injunction stating that "plaintiffs are permanently enjoined from continuing to use the mark 'APR' or the mark 'APR of Ohio' in connection with the business of placing temporary or contract computer-oriented personnel with employers." (Dist. Ct. Op. J.A. 76.) Plaintiff Allard then appealed that decision to the Sixth Circuit Court of Appeals. On appeal, this court affirmed the trial court's priority determination, but vacated the injunction on the grounds that it "lack[ed] the requisite findings to support such a nation-wide injunction, creating a real risk that the injunction proscribes an overly broad range of conduct," *Allard Enterprises, Inc. v. Advanced Programming Resources*, 146 F.3d 350, 360 (6th Cir. 1998), and remanded for further proceedings.

On remand, the district court ordered a new trial to hear evidence on the geographic range of defendants' prior use of the mark, with instruction to the parties that "evidence should

mark on the internet, throughout Ohio and throughout the United States, consistent with this opinion.

have held that APR has superior rights to use the mark, at a minimum, in central Ohio we decline to affirm the district court's conclusion that an injunction prohibiting Allard's use of the mark in a specific geographic area necessarily precludes any use of the mark by Allard on the internet. As the parties have not briefed or argued their positions, we remand this issue to the district court to consider after obtaining briefs on the issue.

We suggest that, due to the paucity of caselaw addressing concurrent trademark rights and internet use, the district court may want to consider cases addressing the role of national advertising by parties with concurrent trademark rights. Courts have held in some cases that, despite a concurrent user with a territory of exclusive use, an almost-national user should be permitted some form of national advertising. *See* 4 McCarthy § 26:46. In a more straightforward case in which a senior user holds a federal registration subject to limited concurrent rights of a junior user, permitting some form of internet use seems necessary; otherwise, if two parties have concurrent rights to the same mark in distinct geographical areas, neither party would ever be allowed any use of the internet. The present case, however, is complicated by the fact that Allard has obtained a federal registration and that APR's initial implementation of its web site appears to have occurred prior to Allard's registration. We therefore leave it to the district court to evaluate the arguments and the unusual facts of this case in the first instance on remand.

## V.

In sum, we conclude that the district court did not err in granting a new trial but did err in permitting defendants to amend their counterclaim to request cancellation of plaintiff's federal registration. We reverse the district court's cancellation of plaintiff's registration. In addition, we affirm the district court's conclusion that defendants have the exclusive right to use the mark in central Ohio. We remand to the district court to evaluate the parties' rights to use the

not duplicate evidence presented at the original trial but may include additional evidence of defendants' use of the mark up to and including September 17, 1996, the date the plaintiff's mark was registered." (Order, J.A. 184.) During closing arguments in that second trial, defendants requested, for the first time, that the court cancel plaintiff's federal trademark registration. The trial judge stated that defendants had to file a motion to amend defendants' answer to include a counterclaim for cancellation of plaintiff's registration. The trial judge then granted defendants' motion to amend. (Order, J.A. 214-23.) In its final order, the trial court granted defendants' counterclaim, canceled plaintiff's federal trademark registration and held that defendants had prior rights in the APR mark throughout the state of Ohio. (Opinion and Order, J.A. 80-107.) Plaintiff Allard now appeals.

## II.

Plaintiff argues first that on remand an evidentiary hearing was not required to comply with the mandate of this court. Plaintiff argues that because defendants counterclaimed and requested an injunction against plaintiffs, defendants should have submitted evidence as to the appropriate extent of the injunction at the first trial. Thus, plaintiff argues that review of the appropriate geographic range of the injunction should be limited to a review of the full record of the original trial.

Despite the fact that both parties requested injunctions in the first trial, it is clear that the only issue tried in that first trial was priority of use. This court, on the first appeal, concluded that the district court erred in granting a nationwide injunction without the findings to support that geographic range. *Allard*, 146 F.3d at 360. This court also explicitly stated that the record was not sufficient to evaluate the appropriate scope of the injunction. The court held that "the record in this case provides inadequate evidence for us to gauge the geographic range of defendants' prior use of the mark." *Allard*, 146 F.3d at 361. Thus, this court gave the following mandate to the trial court:

[W]e vacate the injunction and remand this case to the District Court for further proceedings. The District Court first should make factual findings defining the region where defendants continuously used their APR mark before plaintiff's registration, and then should issue an order granting the appropriate scope of injunctive relief.

*Id.* at 361. On remand, the trial court ordered an evidentiary hearing to determine the appropriate geographic scope of the injunction, stating that "[i]f the record as it exists was insufficient for the Court of Appeals to make that finding, it is similarly insufficient for this Court to do so." (J.A. 183.)

The district court's decision to hold an evidentiary hearing is not outside of the mandate provided by this court. Under the "mandate rule," the district court must act, on remand, in accordance with the decision of a superior court:

> [T]he mandate rule . . . requires lower courts to adhere to the commands of a superior court. . . . Accordingly, "[u]pon remand of the case for further proceedings after a decision by the appellate court, the trial court must 'proceed in accordance with the mandate and the law of the case as established on appeal.' The trial court must 'implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'"

*United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (quoting *United States v. Kikimura*, 947 F.2d 72, 76 (3d Cir. 1991)). In the present case, the Sixth Circuit explicitly remanded "for further proceedings" to determine the appropriate geographic scope of the injunction. The district court's decision to hear more evidence on that issue did not violate this court's mandate.

Plaintiff also alleges that even if it were not outside of the mandate of this court, the district court's decision to hold a new trial was an abuse of discretion because defendants should have presented any evidence relevant to the

area would then become an area of likelihood of confusion if a registration covering it was granted to another party." *Id.* Thus, we conclude that the district court's use of the listed factors and consideration of a zone of natural expansion were appropriate. We remand to the district court with instruction only to consider evidence in the record showing APR activity prior to Allard's application for federal registration to determine whether APR has rights in the entire territory of the state of Ohio.

Finally, because it cancelled Allard's federal registration, the district court concluded that it was not necessary to evaluate APR's use of the mark outside of Ohio. (J.A. 104.) The parties did have the opportunity to present all relevant evidence in the evidentiary hearing held by the district court, however. The district court explained that at that hearing, each party "introduced evidence about where, in its opinion, each had been 'doing business' prior to September 17, 1996, the day that Allard obtained federal registration for its 'APR of Ohio' mark. [And APR] also introduced evidence about where APR intended to do business." (J.A. 81-82.) Because the district court erred in cancelling Allard's registration, it also erred in not considering APR's territorial rights outside of Ohio. Allard holds a valid registration, but it is subject to any rights obtained through use by APR, prior to Allard's registration. Thus, we remand to the district court with the limited instruction to evaluate any activity in the existing record undertaken by APR prior to the date of Allard's federal registration, in light of the considerations described above, to determine if APR has superior rights to Allard's federal registration in any other geographic regions. If so, Allard's federal registration will be further subject to those superior rights. Except in those places in which APR acquired common law rights to the mark prior to Allard's September 17, 1996 registration, Allard has superior rights in accordance with the constructive use provisions of federal registration.

We also vacate the district court's injunction against Allard's use of the APR mark on the internet. Although we

have been cancelled, the district court should have considered only evidence of APR's use in Ohio prior to Allard's 1996 federal registration.

This court must also consider whether the district court applied the appropriate test to the evidence presented by APR to determine that APR has territorial priority throughout the entire state of Ohio, despite somewhat limited actual use. After this court's previous remand to the district court, the district court applied a four prong test to determine in what geographical locations APR's market penetration was sufficient to warrant protection. The four factors used in the district court's October 1999 opinion were as follows: (1) the volume of sales of the product in that area, (2) growth trends in the area, (3) the market penetration as a function of the total product market, and (4) the amount of advertising. (J.A. 98.) The district court took these factors directly from *Accu Personnel, Inc. v. Accustaff, Inc.*, 846 F.Supp. 1191 (D. Del. 1994), but a number of other circuits courts have adopted similar tests. *See, e.g., Natural Footwear Limited v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1398-99 (3d Cir. 1985); *Weiner King, Inc. v. Wiener King, Corp.*, 615 F.2d 512 (C.C.P.A. 1980); *Sweetarts v. Sunline, Inc.*, 380 F.2d 923 (8th Cir. 1967). The *Weiner King* court granted priority to a junior user/registrant, subject only to the senior user's prior use, as defined by factors similar to those above. *Weiner King*, 615 F.2d at 523. The court explained that "actual use in a territory [is] not necessary to establish rights in that territory" if the factors described are satisfied. *Id.*

The U.S. Court of Customs and Patent Appeals has explicitly addressed "the questions as to what circumstances, if any, short of actual use of the trademark, may create rights in a territory . . . ." *In re Beatrice Foods Co.*, 429 F.2d 466, 475 (C.C.P.A. 1970). The court's answer relied on the underlying purpose of trademark law to eliminate consumer confusion. The *Beatrice* court explained that, "[w]here a party has submitted evidence sufficient to prove a strong probability of future expansion of his trade into an area, that

appropriate scope of an injunction in the first trial, when they first requested an injunction. This court rejected the substance of this argument on the first appeal, however, holding that it could review the breadth of the injunction, regardless of the lack of any discussion of the issue below. This court held that plaintiff's failure to raise the issue of the scope of the injunction below was not grounds for waiver. *Allard*, 146 F.3d at 360. Because plaintiff did not waive a challenge to the scope of the injunction, the district judge did not abuse his discretion by hearing evidence on the issue. We conclude that the district court acted within the mandate of this court and within its discretion in granting an evidentiary hearing to make factual findings as to the appropriate geographic scope of the injunction.

### III.

Plaintiff next alleges that the district court erred in granting defendants' motion to amend their answer to include a counterclaim for cancellation of plaintiff's federal trademark registration. We must first determine whether the district court acted contrary to the mandate issued by this court on the first appeal. As described above, the mandate rule requires that, upon remand from this court, the district court proceed in accordance with the mandate and the law of the case established on appeal. Although the trial court must "implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces," *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citations omitted), the trial court "may consider those issues not decided expressly or impliedly by the appellate court or a previous trial court." *Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992). In evaluating whether the district court followed the letter and the spirit of the mandate, however, it is important to determine whether the remand issued by this court to the district court was of a general or limited nature:

[R]emands . . . can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the District Court and create a narrow framework within which the District Court must operate. . . . General remands, in contrast, give the District Court authority to address all matters as long as remaining consistent with the remand.

*United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999).

The district court relied on this court's statement that the case was remanded "for further proceedings consistent with this opinion," to determine that the mandate was a general one. (J.A. 217.) The district court went on to conclude that the Sixth Circuit decision had not addressed the validity of plaintiff's registration. Based on its conclusions that the remand was general and that this court had not addressed, either explicitly or implicitly, the validity of plaintiff's registration, the district court held that it could evaluate the registration without violating the mandate rule.

Contrary to the district court's conclusion, however, this court's opinion suggests that the remand was in fact limited in scope. This court reversed the district court only as to the scope of the injunction. The relevant language from this court's opinion is as follows:

The true deficiency of the order in this case is that it lacks the requisite findings to support such a nation-wide injunction, creating a real risk that the injunction proscribes an overly broad range of conduct.
. . .
[Sixth Circuit] cases make it clear that Allard Enterprises retained the right to use its mark in those geographic regions that defendants had not entered at the time of Allard Enterprises' federal registration. . . . Therefore, we find that the court's order fails to "set forth the reasons for its issuance" and runs afoul of Rule 65(d). Moreover, the record in this case provides inadequate evidence for

The defendants' market penetration in Franklin County, Ohio, and even in the greater Columbus metropolitan area, which includes the southern portion of Delaware County, the western portions of Licking and Fairfield Counties, and parts of Pickaway, Madison, and Union Counties, is not seriously disputed. . . . Simply put, that is the area where defendants' "first use" primarily occurred, and they have superior rights in that market.

(J.A. 99.) On the first appeal in this case, this court accepted the district court's factual findings as to the activity in the Columbus metropolitan area when it "affirm[ed] the trial court's determination that defendants established prior ownership rights to the APR mark." *Allard*, 146 F.2d at 360. As a result, APR has an exclusive right to use the mark in the greater Columbus area, despite Allard's later 1994 initial use, 1995 application and successful 1996 registration of the mark.

The district court also concluded that APR had exclusive right to use the mark throughout the entire state of Ohio, because APR had, at a minimum, shown that the entire state was within its natural zone of expansion before the time when Allard first used the mark in Ohio. In reaching that conclusion, however, the district court evaluated the competing common law rights of the parties and did not acknowledge Allard's constructive use as of its September 1996 federal registration. The district court explained that APR negotiated a statewide contract with the Ohio Department of Transportation and the Ohio Bureau of Employment Services prior to Allard's first use, actual or constructive, (J.A. 91-92), and that the contract was evidence that APR reasonably expected to conduct transactions throughout the state. In addition, the district court noted that APR did make a small number of placements in other parts of the state and advertised throughout the state. (JA 99-100.) The district court did not offer sufficient findings in its opinion, however, as to when this activity occurred, and may have incorrectly relied on activity which occurred after Allard's registration. Because Allard's registration should not

court erred in cancelling plaintiff's federal registration, we conclude that the extent of the geographic priority of the parties must be determined by the presumption of plaintiff's federal registration and any prior common law rights established by defendants. As this court held on the first appeal, "Allard Enterprises' federal registration of the APR OF OHIO service mark . . . serves as prima facie evidence of ownership and places on defendants the burden of showing their prior appropriation and continued use of the APR mark." *Allard,* 146 F.2d at 356. APR is the senior user, however, and "the senior user can rely on its common law use to prove exclusive rights in its territory of use and overcome the registrant's prima facie presumption." 4 McCarthy § 26:53.

The district court concluded that APR was the senior user of the mark based on the fact that APR used the mark in the Columbus area prior to Allard's first use in June of 1994.

---

federal registration and a senior user later institutes concurrent use proceedings. In that case, the court stated that:

> [W]here the prior user does not apply for a registration before registration is granted to another, there may be valid grounds, based on a policy of rewarding those who first seek federal registration . . . for . . . permitting the prior registrant to retain the nationwide protection of the act restricted only by the territory of the prior user.

*Id.* at 474, n.13. In *Weiner King Inc. v. Wiener King Corp.*, 615 F.2d 512 (C.C.P.A. 1980), the court gave registrable rights to all portions of the United States in which the mark had not been used to the junior user registrant, rather than the senior user. *Id.* at 522. While emphasizing the need to consider individually the facts in each case, the court held that in some cases, "there is a policy of encouraging prompt registration of marks by rewarding those who first seek registration under the Lanham Act." *Id.* at 523.

Although these cases addressed the validity of a junior user's registration, which we do not evaluate here, we raise them to show that the result we reach based on procedural rules does not produce a result inherently contrary to the Lanham Act. In addition, we find that some of the general guidelines underlying concurrent use proceedings may direct our determination of an equitable division of geographic priority in the present case.

---

us to gauge the geographic range of defendants' prior use of the mark. For these reasons, we vacate the injunction and remand this case to the District Court for further proceedings. The District Court first should make factual findings defining the region where defendants continuously used their APR mark before plaintiff's registration, and then should issue an order granting the appropriate scope of injunctive relief.

*Allard*, 146 F.3d at 360-61. In the last sentence of the language quoted above, this court provided explicit, limited instructions to the district court regarding the remand. The district court failed to address that sentence when it concluded that this was a general remand. This court restricted the district court's action to only that necessary to make sufficient findings of fact and issue an appropriately limited injunction.

Thus, we conclude that the district court violated the mandate rule by permitting the counterclaim by amendment.[1] As a result, the district court's ruling on that counterclaim cannot stand and we reverse the district court's order canceling plaintiff's trade name registration. We reinstate Allard's federal registration, with the limitations discussed below.

---

[1]Plaintiff also alleges two additional grounds on which the district court erred in permitting defendants to add the counterclaim challenging plaintiff's federal registration. First, plaintiff alleges that the claim was a compulsory counterclaim and thus, under Fed. R. Civ. P. 13(a), was waived by defendants when they failed to include it in their original answer. Second, plaintiff alleges that even though a party may amend its pleading by leave of the court when justice so requires, amendment is not permitted in cases, including this one, where there has been bad faith, undue delay and unfair prejudice. Because we conclude above that the district court violated the mandate rule by permitting defendants to add the counterclaim in question, we need not review these claims and we decline to do so.

## IV.

Plaintiff also contests the district court's determination of its rights and defendants' rights to the service mark. At common law, ownership of trademark or service mark rights is obtained by actual use. J. Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed. 2000) [hereinafter McCarthy]. The first to use a mark in the sale of goods or services is the "senior user" of the mark and gains common law rights to the mark in the geographic area in which the mark is used.

Ownership rights flow only from prior use--either actual or constructive. Federal registration of a trademark or service mark cannot create rights and priority over others who have previously used the mark in commerce, but federal registration is prima facie evidence of the registrant's ownership and exclusive right to use the mark, 15 U.S.C. §§ 1057(b), 1115(a), and constitutes constructive use of the mark. 4 McCarthy § 26:38 (4th ed. 2000). "Constructive use" means that which establishes a priority date with the same legal effect as the earliest actual use of a trademark at common law. 4 McCarthy § 26:38 (4th ed. 2000). In the typical case in which a senior user applies for the federal registration, "[c]onstructive use will fix a registrant's nationwide priority rights in a mark from the filing of its application for registration." *Id.* In the case in which a junior user applies for registration, however, the extent of the senior user/non-registrant's territory is frozen as of the date of actual registration to the junior user. 4 McCarthy §§ 26:40, 25:53; Lanham Act § 15, 15 U.S.C. § 1065.

The territorial rights of a holder of a federally registered trademark are always subject to any superior common law rights acquired by another party through actual use prior to the registrant's constructive use. Thus, in the present case, although Allard (the junior user) filed an application to register the mark on March 30, 1995 and the mark was validly registered on the principal register on September 17, 1996,

Allard's ownership rights are subject to any superior common law rights acquired by APR (the senior user) prior to registration. The district court has previously determined, and this court affirmed, that APR is the senior user of the "APR" mark. In other words, the district court concluded that defendant APR used the mark in commerce first, prior to Allard's first recognized use in its March 30, 1994 mailing. Thus, it is clear that APR has some right to the use of the mark superior to Allard's, despite Allard's federal registration. The key question here, however, is the correct geographic extent of that superior right. As this court held on the first appeal, "defendants' rights to its mark extend only as far as the area where its continuous prior use of that mark preempted plaintiff's constructive use of its mark." *Allard*, 146 F.3d at 361.

Typically, under § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), it is the senior user who has the right to a federal registration, subject only to the prior common law rights of a junior user who has used the mark prior to the senior user's application for federal registration. 4 McCarthy § 26:33. In the present case, however, we have concluded that for procedural reasons, defendants cannot challenge plaintiff's federal registration here. Thus, we must determine the rights of the parties in the context of a junior user with a valid federal registration.[2] Given our conclusion that the district

---

[2]We make no findings as to whether there exists any other forum in which defendants could successfully challenge plaintiff's federal registration or request concurrent federal registration. We do note, however, that upholding at least a portion of a junior user's federal registration against a senior user's challenge is not inconsistent with the Lanham Act or prior caselaw.

For example, in *In re Beatrice Foods Co.*, 429 F.2d 466 (C.C.P.A. 1970), the U.S. Court of Customs and Patent Appeals first established the rules for concurrent use proceedings. The court acknowledged the rule that in the typical case, in which neither party has a federal registration, the senior user is entitled to a registration covering the entire United States, except areas of proven use by the junior user. *Id.* at 474. The court recognized an exception, however, in the case where a junior user gets a