# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 13-31112

July 23, 2014

Lyle W. Cayce
Clerk

ACTION INK, INCORPORATED, a Louisiana Corporation,

Plaintiff - Appellant

v.

NEW YORK JETS, L.L.C., a New York limited liability company;
ARKADIUM, INCORPORATED, a New York corporation,

Defendants - Appellees

Consolidated w/ No. 13-31113

ACTION INK, INCORPORATED,

Plaintiff - Appellant

v.

ANHEUSER-BUSCH, INCORPORATED,

Defendant - Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:12-CV-46, 2:12-CV-141

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

No. 13-31112

PER CURIAM:[*]

This opinion decides the two captioned cases, consolidated on appeal.

Action Ink, the plaintiff and appellant, registered a service mark to use the phrase "Ultimate Fan" in the context of promotional contests at sporting events. It conducted no contests between 1995 and 2012, when it sued the defendants for infringement. We hold that Action Ink abandoned its mark, and affirm the respective judgments in each case.

I.

Action Ink, Inc. ("Action Ink") has no employees and one sole shareholder, Michael Eckstein. It owns a service mark for the phrase "Ultimate Fan" ("the mark"). The registration for the mark is for "promoting the goods and/or services of others by conducting a contest at sporting events." Action Ink last held such a contest in 1995. Since then, Action Ink has sent out letters to many businesses alleging infringement, some of which are signed by Eckstein, who is also a lawyer. Action Ink has also sought unsuccessfully to interest potential clients in holding promotional contests.

In 2012, Action Ink sued Anheuser-Busch, Inc. ("Anheuser-Busch"), and in a separate suit also sued the New York Jets, L.L.C. and Arkadium Inc. (collectively, the "Jets Defendants"). Action Ink alleged infringement and false designation of origin under the Lanham Act,[1] and unfair competition, injury to business reputation and unfair trade practices under Louisiana law.[2]

Judge Milazzo in No. 13-31112 awarded summary judgment to the Jets Defendants. The court held that Action Ink had abandoned its service mark and consequently had no valid mark that could have been infringed. Judge

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 15 U.S.C. §§ 1114, 1125(a).

[2] La. Rev. Stat. §§ 51:1405, 51:223.1.

No. 13-31112

Vance in No. 13-31113 subsequently granted summary judgment to Anheuser-Busch on the grounds that: (a) collateral estoppel from the Jets suit applied on the abandonment issue and thus Action Ink had no valid mark and (b) Action Ink failed to show a likelihood of confusion between its mark and Anheuser-Busch's.   Action Ink now appeals each of the judgments dismissing its respective complaints.

## II.

We first consider Judge Milazzo's grant of summary judgment to the Jets Defendants, which we review de novo. *Royal v. CCC&R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013).

The Lanham Act provides that a mark shall be abandoned (1) "[w]hen its use has been discontinued" and (2) there is "an intent not to resume such use." 15 U.S.C. § 1127. "Use" is defined as "the bona fide use of [a] mark made in the ordinary course of trade, *not made merely to reserve a right in a mark.*" *Id.* (emphasis added).   Nonuse for three consecutive years is prima facie evidence of abandonment. *Id.*   Once a party establishes a prima facie case of abandonment, it becomes the mark holder's burden to show that "circumstances do not justify the inference of intent not to resume use." *Exxon Corp. v. Humble Exploration Co., Inc.*, 695 F.2d 96, 99 (5th Cir. 1983).

The Jets Defendants have established their prima facie case of abandonment.   We note that

> A trademark is a symbol of existing good will.   Thus, if for any reason, the good will of a business or product comes to an end, there is nothing left for a mark to symbolize. Such a mark should be officially declared "abandoned." If there is no good will or a reasonable prospect of it, a "trademark" symbolizes nothing.

3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 17.14 (4th ed. 1996).

No. 13-31112

Action Ink performed no contests for seventeen years before filing suit. Thus, there was "nothing left for [its] mark to symbolize." *Id.*

Action Ink argues that soliciting clients constituted "bona fide use." *See* 15 U.S.C. § 1127. Action Ink cites *Allard Enters. v. Advanced Programming Res.*, 146 F.3d 350, 359 (6th Cir. 1998), which held that the defendant's activities, which included but were not limited to solicitation of clients, constituted "use in commerce." But *Allard* does not help Action Ink. Unlike Action Ink, the *Allard* defendant rendered services to at least one client, arranging for that client to interview a job applicant. *Id.* at 353. The *Allard* defendant also went on to achieve significant market penetration and sign a state-wide contract. *See Allard Enters v. Advanced Programming Res.*, 249 F.3d 564, 573–74 (6th Cir. 2001). In contrast, Action Ink has nothing to show for its years of soliciting clients.

As the Jets Defendants have established their prima facie case of abandonment, the burden shifts to Action Ink to establish that "circumstances do not justify the inference of intent not to resume use," *Exxon*, 695 F.2d at 99. Action Ink points to a licensing agreement it signed with Tulane University in 2013. But this agreement does not persuade us that Action Ink had any intent to resume bona fide use of its mark. First, Action Ink signed the agreement only after it had already sued the defendants here. Second, Tulane's consideration for the license suggests a sham agreement, as Tulane agreed to give 300 tickets to various charitable groups that Tulane had the sole authority to choose. Third, Action Ink points us to no authority stating that a licensing agreement, even if legitimate, can resurrect a mark that has been long abandoned.

The Jets Defendants have thus established abandonment. Because Action Ink failed to argue on appeal that collateral estoppel on abandonment does not apply to Anheuser-Busch, we hold that Action Ink also abandoned its

4

No. 13-31112

mark with respect to Anheuser-Busch. We consequently do not reach the likelihood of confusion between Action Ink's and Anheuser-Busch's marks.

III.

For the reasons above, the respective judgments of the district courts in favor of all defendants in each of the cases are

AFFIRMED.