387 F.3d 1024
 In re HERCULES ENTERPRISES, INC., dba JP's Health Club, Debtor.
James Hansbrough, Appellant,
v.
David Birdsell, Chapter 7 Trustee of Hercules Enterprises, Inc.'s Bankruptcy Estate, Appellee.
 No. 02-16958.
 United States Court of Appeals, Ninth Circuit.
 Submitted February 12, 2004.*
 Filed October 29, 2004.
 
 COPYRIGHT MATERIAL OMITTED James Hansbrough, Mesa, AZ, appellant Pro Se.
 John J. Fries, Ryley Carlock & Applewhite, Phoenix, AZ, for the appellee.
 Appeal from the United States District Court for the District of Arizona; Paul G. Rosenblatt, District Judge, Presiding. D.C. No. CV-01-01863-PGR.
 Before TASHIMA and CLIFTON, Circuit Judges, and LEIGHTON,** District Judge.
 LEIGHTON, District Judge.
 I.
 James Hansbrough appeals the district court's judgment affirming the bankruptcy court's award of sanctions against him for contempt of court, and its determination that the sanction would not be dischargeable in any personal bankruptcy filing Hansbrough might make in the future.
 The bankruptcy court had the authority to sanction Mr. Hansbrough, the corporate debtor's principal, for his repeated failure to comply with the court's orders. A bankruptcy court cannot, however, adjudicate the subsequent dischargeability of a sanction properly imposed on a non-debtor. While the court can impose a sanction that generally will not be dischargeable under 11 U.S.C. § 523(a)(7) in a future bankruptcy, the determination of dischargeability ultimately remains the province of the bankruptcy court presiding over that debtor's bankruptcy case. The district court's order affirming the bankruptcy court's determination of non-dischargeability is therefore vacated.
 
 II.
 
 1
 James Hansbrough is the sole owner of a corporation known as Hercules, Inc., the debtor in this case, which operated a gymnasium and health club in Phoenix. In a dispute with its landlord over the failure to pay rent, Hansbrough filed on Hercules' behalf for protection under Chapter 7 of the Bankruptcy Code. A subsequent inspection of the gym revealed that it contained a variety of exercise equipment. At the landlord's request the automatic stay was lifted, and the eviction proceedings resumed. Hansbrough interfered with the eviction process, and was ultimately sanctioned.
 
 
 2
 Hansbrough also removed the exercise equipment from the gym. The Trustee, Appellee Birdsell, moved the bankruptcy court to compel its return. At a March 1, 2000, hearing on that motion, Hansbrough told the bankruptcy court that the equipment was in a storage locker. He was ordered to accompany Birdsell to the storage facility and to show the equipment to him. Hansbrough did so, and the locker contained a wholly different, and lesser, collection of exercise equipment.
 
 
 3
 At the ensuing Bankruptcy Rule 2004 examination to determine the equipment's whereabouts, Hansbrough asserted his Fifth Amendment right against self-incrimination, and refused to disclose the equipment's location. On June 12, 2000, the bankruptcy court ordered Hansbrough to turn over the equipment under pain of contempt of court.
 
 
 4
 Hansbrough continued to ignore the court's order. At yet another hearing on January 11, 2001, Hansbrough was ordered to produce the equipment or face incarceration for contempt of court. Hansbrough appealed the coercive order of incarceration. The district court reversed and remanded, ruling that Hansbrough could not be civilly, coercively incarcerated for failing to turn over equipment he no longer possessed.
 
 
 5
 Hansbrough's recalcitrance continued. The bankruptcy court held hearings in June, August, and September, 2001, in an attempt to convince Mr. Hansbrough to produce the equipment (or to inform the Trustee of its whereabouts), and to address the imposition of punitive sanctions for Hansbrough's continued contempt of court. Hansbrough refused to cooperate.
 
 
 6
 As punishment for his contempt, on September 12, 2001 the bankruptcy court ordered Hansbrough to pay to the Trustee $20,883.00, an amount approximating the fees and costs incurred by him as the result of Hansbrough's misconduct. The bankruptcy court also ordered that the sanction would be non-dischargeable in any personal bankruptcy filing Mr. Hansbrough might make in the future.
 
 
 7
 The district court affirmed both aspects of the bankruptcy court's order on August 30, 2002, and Hansbrough timely appealed to this court. We review the district court's decision de novo. In a bankruptcy appeal, this means that "[w]e independently review the bankruptcy court's decision and do not give deference to the district court's determinations." Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1172 (9th Cir.2003) (citation and internal quotation marks omitted).
 
 III.
 
 8
 Hansbrough raises two primary issues on appeal. First, he challenges the bankruptcy court's authority to sanction him for contempt for failing to comply with the court's orders absent an "evidentiary hearing."
 
 
 9
 Second, Hansbrough claims that the district court erred in affirming that portion of the bankruptcy court's order that purported to make the sanction non-dischargeable if Hansbrough subsequently filed a bankruptcy petition on his own behalf. He argues that because he was not the debtor or otherwise a party to the bankruptcy proceeding, the bankruptcy court did not have jurisdiction over him to make such a determination.
 
 
 10
 A. Bankruptcy court's civil contempt power.
 
 
 11
 We review the bankruptcy court's award of sanctions, including an award of attorneys' fees, for an abuse of discretion. Kord Enters. II v. California Commerce Bank (In re Kord Enters. II), 139 F.3d 684, 686 (9th Cir.1998); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine), 77 F.3d 278, 283 (9th Cir.1996).
 
 
 12
 Mr. Hansbrough claims that the bankruptcy court abused its discretion in sanctioning him without an evidentiary hearing. Hansbrough appeared before the bankruptcy court numerous times, and was repeatedly told to comply with the "Turnover Order" or else be sanctioned. He provides no authority for the position that yet another hearing was required, and we are aware of none.
 
 
 13
 To the contrary, it is well established that a bankruptcy court is authorized to exercise civil contempt power:
 
 
 14
 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
 
 
 15
 11 U.S.C. § 105(a); see also In re Rainbow Magazine, 77 F.3d 278 at 284.
 
 
 16
 In fact, the prior version of Bankruptcy Rule 9020 provided express authority for the imposition of sanctions for civil contempt of court. While this language has subsequently been deleted, the Advisory Committee Notes to the current Rule explain that the amendment was not intended to curtail a bankruptcy court's ability to impose sanctions for civil contempt:
 
 
 17
 This rule, as amended, does not address a contempt proceeding initiated by the court sua sponte. Whether the court is acting on motion under this rule or is acting sua sponte, these amendments are not intended to extend, limit, or otherwise affect either the contempt power of a bankruptcy judge or the role of the district judge regarding contempt orders. Issues relating to the contempt power of bankruptcy judges are substantive and are left to statutory and judicial development, rather than procedural rules.
 
 
 18
 See also In Re Rainbow Magazine, 77 F.3d 278 at 284-285.
 
 
 19
 In order to find Mr. Hansbrough in contempt, the bankruptcy court had to find that he violated a specific and definite order and that he had sufficient notice of its terms and the fact that he would be sanctioned if he did not comply. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1190-91 (9th Cir.2003)("The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.").
 
 
 20
 The bankruptcy court ordered Hansbrough to turn over the missing equipment under penalty of contempt on June 12, 2000. Hansbrough refused to do so, and the bankruptcy court held a contempt hearing on January 11, 2001. It again ordered Hansbrough to turn over the equipment, and ordered that he be incarcerated as a coercive sanction until he did so. While Hansbrough successfully appealed the coercive sanction, it is abundantly clear that Hansbrough was informed on that occasion that his continued recalcitrance would be viewed as contempt of court.
 
 
 21
 After the district court reversed the coercive sanction of incarceration, the bankruptcy court held three additional hearings to address Hansbrough's failure to comply with the court's order. At each, Hansbrough was unambiguously ordered to comply, under pain of contempt of court. He failed at each hearing to comply with the court's order, and at the final hearing was sanctioned an amount approximating the fees and costs incurred by the Trustee as a result.
 
 
 22
 The record is clear that Hansbrough had ample notice of the consequences of his acts and failures, and his conduct continued unabated. Hansbrough has not met his high burden of demonstrating that, in the face of his conduct, the bankruptcy court abused its discretion in not holding yet another "evidentiary hearing" prior to sanctioning him. The district court's order affirming the imposition of the sanction is therefore affirmed.
 
 
 23
 B. Bankruptcy court's power to make a sanction non-dischargeable.
 
 
 24
 The second aspect of the bankruptcy court's September 15, 2001 order is more troubling. The bankruptcy court ordered that the $20,883.00 contempt sanction would not be dischargeable by Hansbrough in any subsequent personal bankruptcy filing. Hansbrough claims that the bankruptcy court did not have the ability to adjudicate the dischargeability of the sanction because the debtor before the court was a corporate entity, and not Hansbrough himself.
 
 
 25
 The Fifth Circuit has held that a bankruptcy court does not have the ability to order that a sanction imposed on a debtor's attorney would be non-dischargeable in a future bankruptcy proceeding filed by him:
 
 
 26
 The bankruptcy court was also without authority to order the sanction levied against Smith non-dischargeable sanctions. The bankruptcy court may only determine the dischargeability of debts owed by a debtor who has sought the protection of the bankruptcy laws. Smith is not such a person.
 
 
 27
 Citizens Bank & Trust Co. v. Case (In re Case), 937 F.2d 1014, 1025 (5th Cir.1991).
 
 
 28
 There are no Ninth Circuit opinions directly addressing this issue. We agree with the Fifth Circuit that a bankruptcy court may not finally adjudicate the subsequent dischargeability of a sanction properly imposed on a non-party participant in a bankruptcy proceeding. A bankruptcy court may adjudicate only the dischargeability of debts owed by the debtor seeking protection under the bankruptcy laws. For this reason, the portion of the bankruptcy court's order purporting to make the sanction against Hansbrough non-dischargeable in the event of a future bankruptcy filing must be vacated.
 
 
 29
 However, this conclusion does not mean that a bankruptcy court is powerless to impose a meaningful sanction against corporate representatives or other non-debtors participating in a bankruptcy and violating the bankruptcy court's orders. Under 11 U.S.C. § 523(a)(7), civil contempt sanctions are generally non-dischargeable where, as here, they are imposed to uphold the dignity and authority of the court. For example see U.S. Sprint Communications Co. v. Buscher, 89 B.R. 154, 156 (D.Kan.1988); PRP Wine Int'l, Inc. v. Allison (In re Allison), 176 B.R. 60, 63-64 (Bankr.S.D.Fla.1994). In these cases, the dischargeability of a prior fine was at issue in the subsequent bankruptcy. Fines and penalties—such as the sanctions imposed on Mr. Hansbrough here—are generally not dischargeable under § 523(a)(7).
 
 
 30
 Accordingly, a debtor seeking to discharge a pre-petition sanction faces an uphill battle. While he has the ability under Bankruptcy Rule 4007 to seek a determination of the dischargeability of the sanction in that subsequent proceeding, the bankruptcy court will evaluate and adjudicate the prior debt's dischargeability guided at least in part by § 523(a)(7). It is for this reason that a representative of a corporate debtor, like Mr. Hansbrough, is not free flatly to ignore the bankruptcy court's orders, absorb any sanction the court can muster, and then simply file a personal bankruptcy petition before a different court and obtain a discharge as a matter of course.
 
 
 31
 Therefore, although the dischargeability of a civil contempt sanction for the kind of conduct displayed by Mr. Hansbrough cannot be finally adjudicated by the bankruptcy court presiding over the corporation's bankruptcy proceeding, the sanctioning court is free to point out that the sanction imposed is of the sort that is generally excluded from discharge under § 523(a)(7). Indeed, it is possible that this is all the bankruptcy court intended to do in its order of September 15, 2001. To avoid any confusion on this point, however, we will vacate the portion of the order which might be read as seeking to adjudicate the sanction's future dischargeability.
 
 
 32
 AFFIRMED in part and VACATED in part. Each party shall bear his own costs on appeal.
 
 
 
 Notes:
 
 
 *
 This panel finds this case appropriate for submission without oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(2)
 
 
 **
 Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation