*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 10b0001n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: CLAYTON D. CLINE, | ) | |
| | ) | |
| Debtor. | ) | |
| ———————————————————— | ) | |
| | ) | No. 08-8104 |
| GENERAL MOTORS ACCEPTANCE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| | ) | |
| CLAYTON D. CLINE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| ———————————————————— | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Youngstown.
Bankruptcy Case No. 06-40484; Adv. No. 06-4141.

Argued: November 3, 2009

Decided and Filed: January 6, 2010

Before: FULTON, McIVOR, and RHODES, Bankruptcy Appellate Panel Judges.

————————————

**COUNSEL**

**ARGUED:** Michael Kaminski, BLUMLING & GUSKY, LLP, Pittsburgh, Pennsylvania, for Appellant. Angela M. Paul Whitfield, CARPENTER LIPPS & LELAND LLP, Columbus, Ohio, for Appellee. **ON BRIEF:** Michael Kaminski, BLUMLING & GUSKY, LLP, Pittsburgh, Pennsylvania,

1

for Appellant.  Angela M. Paul Whitfield, Joel E. Sechler, CARPENTER LIPPS & LELAND LLP, Columbus, Ohio, for Appellee.

---

## OPINION

---

MARCI B. McIVOR, Bankruptcy Appellate Panel Judge.  Clayton Cline ("Appellant") appeals from an order of the bankruptcy court finding that a $2,486,699.77 debt owed by him to General Motors Acceptance Corporation ("GMAC") is excepted from discharge under the embezzlement prong of 11 U.S.C. § 523(a)(4).  The Appellant also appeals an order of the bankruptcy court cancelling an evidentiary hearing.  For the reasons that follow, the bankruptcy court's orders are AFFIRMED.

## I.  ISSUE ON APPEAL

The issue presented in this appeal is whether the bankruptcy court erred in determining that a $2,486,699.77 debt owed by the Appellant to GMAC is nondischargeable as embezzlement under 11 U.S.C. § 523(a)(4).  More specifically, the Panel must determine whether the bankruptcy court's finding that Appellant possessed the requisite fraudulent intent was clearly erroneous.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("the Panel") has jurisdiction to decide this appeal.  The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and neither party has timely elected to have this appeal heard by the district court.  28 U.S.C. § 158(b), (c)(1).  The BAP has jurisdiction to hear appeals from final orders of the bankruptcy court.  28 U.S.C. § 158(a)(1).  A final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations and internal quotation marks omitted).  Determinations of nondischargeability are final orders for purposes of appeal. *Hertzel v. Educ. Credit Mgmt. Corp.* (*In re Hertzel*), 329 B.R. 221, 224-25 (B.A.P. 6th Cir. 2005) (citing *Cundiff v. Cundiff* (*In re Cundiff*), 227 B.R. 476, 477 (B.A.P. 6th Cir. 1998)).

The bankruptcy court's ruling on the nondischargeability of debt is an issue of law that is reviewed de novo. *Bailey v. Bailey* (*In re Bailey*), 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000) (citation omitted). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citing *In re Schaffrath,* 214 B.R. 153, 154 (B.A.P. 6th Cir. 1997)). Factual findings underlying the bankruptcy court's dischargeability ruling are reviewed for clear error. *In re Hertzel*, 329 B.R. at 225 (citations omitted); *Van Aken v. Van Aken* (*In re Van Aken*), 320 B.R. 620, 622 (B.A.P. 6th Cir. 2005) (dischargeability determinations present mixed questions of law and fact; the bankruptcy court's conclusions of law are reviewed de novo, while findings of fact are reviewed for clear error). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985); *Rogan v. Bank One* (*In re Cook*), 457 F.3d 561, 565 (6th Cir. 2006) (quoting *Simon v. Chase Manhattan Bank* (*In re Zaptocky*), 250 F.3d 1020, 1027 (6th Cir. 2001)).

A bankruptcy court's order cancelling an evidentiary hearing is an interlocutory order. Interlocutory appeals may be heard with leave of the Panel. 28 U.S.C. § 158(a)(3). Non-final orders merge with the final judgment in a case and may be appealed by filing a timely notice of appeal of the final judgment. *Cattin v. General Motors Corp.*, 955 F.2d 416, 428 (6th Cir. 1992) ("[I]t is well settled in this circuit that an appeal from a final judgment draws into question all prior non-final rulings and orders."). The order determining dischargeability of debt was timely appealed in this case. Accordingly, the interlocutory order on appeal is subject to this Panel's review along with the order determining dischargeability of debt. The bankruptcy court's decision to cancel an evidentiary hearing is reviewed for abuse of discretion. *See Hansborough v. Birdsell* (*In re Hercules Enters., Inc.*), 387 F.3d 1024, 1028 (9th Cir. 2004) (bankruptcy court did not abuse its discretion in declining to hold evidentiary hearing). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Schmidt v. Boggs* (*In re Boggs*), 246 B.R. 265, 267 (B.A.P. 6th Cir. 2000).

## III. FACTS

The Appellant was the President and majority owner of Mountain Chevrolet Buick, Inc. ("Mountain Chevrolet"), an automobile dealership located in East Liverpool, Ohio. In October 2002, Mountain Chevrolet executed a Wholesale Security Agreement with GMAC under which GMAC agreed to advance floor plan financing to Mountain Chevrolet. In return, GMAC received a security interest in the vehicles acquired by Mountain Chevrolet and in vehicle sale or lease proceeds.[1] In addition, Mountain Chevrolet and GMAC executed a General Security Agreement which granted GMAC a security interest in Mountain Chevrolet's tangible and intangible assets. GMAC perfected its security interests in accordance with the requirements of the Uniform Commercial Code. The floor plan financing arrangement required Mountain Chevrolet, upon the sale or lease of a floor-planned vehicle, to promptly remit to GMAC the amount GMAC advanced or was obligated to advance for the vehicle on Mountain Chevrolet's behalf. The Appellant personally and unconditionally guaranteed Mountain Chevrolet's indebtedness to GMAC.

Between December 12, 2005 and February 8, 2006, the Appellant, as principal of Mountain Chevrolet, transferred 130 vehicles out of inventory without paying GMAC any of the $2,486,699.77 it was due for the vehicles.[2] At the same time, sixteen checks totaling $470,024.37 were issued from the corporate account and made payable to employees of Mountain Chevrolet and to family members and friends of the Appellant.

---

[1]The Wholesale Security Agreement provides in part:

> The collateral subject to this Wholesale Security Agreement is new vehicles held for sale or lease and used vehicles acquired from manufacturers or distributors and held for sale or lease, and all vehicles of like kinds or types now owned or hereafter acquired from manufacturers, distributors or sellers by way of replacement, substitution, addition or otherwise, and all additions and accessions thereto and all proceeds of such vehicles, including insurance proceeds.

[2]One hundred thirty-one vehicles were originally transferred out of Mountain Chevrolet's inventory between December 12, 2005 and February 8, 2006. However, a 2006 Rendevous transferred to Kimberly Cline, Appellant's sister-in-law, was later returned to GMAC, putting the total number of transferred vehicles at one hundred thirty.

Mountain Chevrolet filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 27, 2006. The case was converted to chapter 7 on July 6, 2006. GMAC filed a proof of claim in the Mountain Chevrolet bankruptcy in the amount of $2,486,699.77. On April 17, 2006, the Appellant filed a voluntary petition for relief under chapter 7 of the bankruptcy code. Schedule F of his petition lists GMAC as the holder of an unsecured nonpriority claim in the amount of $2,400,000. GMAC did not file a proof of claim in the Appellant's bankruptcy case.

On August 7, 2006, GMAC filed an adversary complaint seeking a declaration that the debt owed to it by the Appellant is nondischargeable pursuant to § 523(a)(4) and (a)(6). The four count complaint alleged impairment of security interest, conversion, fraud/misrepresentation, and violation of the Ohio Fraudulent Transfer Act. When the Appellant failed to file an answer, GMAC moved for entry of a default judgment. The bankruptcy court entered an order granting GMAC's motion for default judgment on February 26, 2007. The Appellant did not seek relief from the default judgment.

The bankruptcy court held an evidentiary hearing on the issue of damages on June 13, 2007. GMAC called Anthony C. Zimmer, a GMAC loan specialist responsible for the Mountain Chevrolet account, as its only witness. The majority of GMAC's exhibits were admitted into evidence without objection.[3] In addition, the Appellant appeared at the hearing pro se and was permitted to testify. At the conclusion of the hearing, the court took the matter under advisement.

---

[3]The bankruptcy court admitted into evidence the following GMAC exhibits: Exhibit 1 - Wholesale Security Agreement; Exhibit 2 - General Security Agreement; Exhibit 3 - Guaranty; Exhibit 5 - a Vehicle Chart prepared by GMAC and based on GMAC's records, documents in Mountain Chevrolet files, and other miscellaneous documents including tax receipts. The Vehicle Chart lists the vehicles that were transferred, the date of the transfer, to whom the vehicle was transferred, the amount paid for each vehicle, and the amount paid to GMAC on account of each transfer; Exhibit 6 - a Proceeds Chart prepared by GMAC that lists checks that were written from Mountain Chevrolet's account and made payable to insiders of Mountain Chevrolet and family and friends of the Appellant; Exhibit 7 - Dealer Jacket documenting the sale of a 2005 Buick Terraza to the Appellant's ex-wife; Exhibit 8 - Dealer Jacket documenting the sale of a 2006 Chevrolet Tahoe to the Appellant's ex-wife; Exhibit 9 - Dealer Jacket documenting the sale of a 2006 Buick LaCrosse to the Appellant's girlfriend; and Exhibit 10 - an undated Wholesale Sales Order documenting three vehicle transfers made to Newell Central Services with the notation "Cars Exchanged for Money Loaned 8/31/2005." Exhibits 12 and 15-20 are not included in the record on appeal.

On July 24, 2007, the bankruptcy court entered an opinion and order finding that $444,105.94 of the $2,486,699.77 debt owed by Mountain Chevrolet to GMAC was excepted from discharge in the Appellant's bankruptcy case. The bankruptcy court separated the vehicle and check transfers into two distinct groups based upon whether the transfer was made to satisfy a debt of the corporation or whether it was made to satisfy a personal obligation of the Appellant.[4] The court found that transfers made by the Appellant to satisfy the Appellant's preexisting personal obligations should be analyzed under the larceny prong of § 523(a)(4). Transfers made by the Appellant on behalf of the corporate entity, Mountain Chevrolet, were analyzed under the embezzlement prong of § 523(a)(4). In so doing, the bankruptcy court concluded that transfers made to satisfy corporate debt were breaches of contract which could not constitute embezzlement as a matter of law. The bankruptcy court held that the vehicle and check transfers made on behalf of corporate obligations were dischargeable.

In total, the bankruptcy court found that five vehicles were transferred in satisfaction of the Appellant's personal obligations.[5] Additionally, the court determined that six checks totaling $265,024.37 were drawn on the corporate account and transferred in payment of Appellant's preexisting personal debts. Accordingly, $444,105.94 of the $2,486,699.77 debt owed by Mountain Chevrolet to GMAC was excepted from the Appellant's discharge as larceny. The bankruptcy court denied GMAC's claim under § 523(a)(6), finding no evidence that the Appellant's actions caused

---

[4]Documents presented to the bankruptcy court and admitted into evidence show that the following vehicle transfers occurred between December 12, 2005 and February 8, 2006: (1) six vehicle transfers made to the Appellant's family members; (2) seven vehicle transfers made to insiders or employees of Mountain Chevrolet; (3) six vehicle transfers made to Mountain Used Car Outlet, a company affiliated with Mountain Chevrolet and owned by the Appellant; (4) seventeen vehicle transfers made to corporate insiders of Mountain Chevrolet; (5) fifty-three vehicles sold in bulk wholesale; (6) thirty-four vehicle transfers made to nine automobile dealerships in dealer trades; and (7) eight vehicles sold at retail. The Appellant testified that the vehicles were transferred and that GMAC did not receive any money from the transfers.

[5]The bankruptcy court found that the Appellant gave two vehicles to his mother, father and sister to repay loans they had made to the Appellant. Additionally, one vehicle was given to the Appellant's friend in satisfaction of Appellant's personal obligation. Finally, two vehicles were given to Leigh Cline, the Appellant's ex-wife, in lieu of spousal support.

malicious and willful injury to GMAC.  GMAC filed a timely appeal and elected to have the appeal heard in district court.

On appeal to the district court, GMAC argued that the bankruptcy court erred in holding that: (1) transfers made in satisfaction of corporate debt occurred in the ordinary course of business, and (2) the corporate transfers were breaches of contract that could not be excepted from discharge under the embezzlement arm of § 523(a)(4).  The Appellant did not defend the appeal.

The district court found that the bankruptcy court erred in holding that transfers made on behalf of Mountain Chevrolet in satisfaction of corporate obligations constituted a breach of contract that could not also be subject to a claim of embezzlement under § 523(a)(4).  The court concluded that the corporate transfers met the first two elements of embezzlement under § 523(a)(4) in that: (1) GMAC entrusted the Appellant with its property, and (2) the Appellant put GMAC's property to a use for which it was not entrusted.  The case was remanded to the bankruptcy court for determination of whether the Appellant possessed the requisite level of intent needed to satisfy the third and final element of embezzlement under § 523(a)(4).  The court determined that it was irrelevant whether or not vehicle transfers occurred in the ordinary course of business.  The parties did not seek leave to appeal the district court's interlocutory opinion and order.

On remand, the bankruptcy court scheduled a second evidentiary hearing.  On October 17, 2008, GMAC filed a motion to cancel the evidentiary hearing, informing the court that it had no new evidence to present to the court beyond what had been presented at the June 13, 2007 evidentiary hearing on damages.  For that reason, GMAC asked the bankruptcy court to decide the remanded issue on the existing record.  Notice of GMAC's motion to cancel the evidentiary hearing was mailed to the Appellant.  The Appellant did not file an objection to GMAC's motion.  On October 20, 2008, the  bankruptcy court entered an order granting GMAC's motion to cancel the evidentiary hearing. The Appellant did not file a motion to alter, amend, reconsider, or vacate the order cancelling the evidentiary hearing.

On November 25, 2008, the bankruptcy court issued an opinion and order finding that the Appellant fraudulently intended to deprive GMAC of its property. The court held that the entire amount owed to GMAC ($2,486,699.77) was nondischargeable under § 523(a)(4). Appellant's timely appeal followed.

## IV. DISCUSSION

Appellant waived the issue of whether the bankruptcy court denied him due process in cancelling the evidentiary hearing on the remand issues without giving Appellant the opportunity to be heard

In his designation of record and statement of issues presented on appeal, the Appellant lists the following issues on appeal: (1) whether the bankruptcy court erred in cancelling the evidentiary hearing on the remanded issues without the Appellant having the opportunity to be heard on the propriety of the cancellation; (2) whether the Appellant was denied due process when the bankruptcy court failed to allow him to present evidence on the remanded issues; and (3) whether the bankruptcy court erred in finding that the Appellant possessed the fraudulent intent necessary to render his obligations to GMAC nondischargeable. The Appellant's brief does not present these same issues on appeal. Therefore, to the extent the Appellant appeals the bankruptcy court's October 20, 2008 order cancelling the evidentiary hearing, the issue is deemed waived.

The order cancelling the evidentiary hearing is referenced in the statement of facts section of the Appellant's brief. The Appellant states that the evidentiary hearing was cancelled "without affording [Appellant] a chance to respond to GMAC's motion to cancel." In a lengthy footnote, the Appellant describes testimony he would have presented at a second evidentiary hearing "[h]ad he been given the opportunity, as should have been afforded given his due process rights."

The Appellant made no effort to develop argument on the issue of whether the bankruptcy court deprived him of his right to due process by cancelling the evidentiary hearing. In addition, no authority was cited nor was any argument made regarding whether the bankruptcy court erred in cancelling the hearing. The Appellant is represented by counsel before this Panel and is not entitled to the latitude afforded pro se litigants. "[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.

8

*United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

In the alternative, the Panel finds that the bankruptcy court did not deny the Appellant due process in waiving the evidentiary hearing. GMAC filed a motion with the bankruptcy court requesting that the evidentiary hearing be cancelled because it had no new evidence to present to the court. After reading the Appellant's proffer of testimony, it is clear that the Appellant also did not have new evidence to present to the court. In footnote three of the Appellant's brief, he describes the testimony he would have offered in a second evidentiary hearing. However, the Appellant offered this testimony in the first evidentiary hearing. In fact, the Appellant cites to portions of the evidentiary hearing transcript in support of his proffered testimony. Furthermore, much of the Appellant's proffered testimony does not address the underlying issue of whether the Appellant possessed an intent to embezzle under § 523(a)(4). Therefore, the bankruptcy court did not abuse its discretion in cancelling the evidentiary hearing.

Notice of GMAC's motion to cancel the evidentiary hearing was mailed to the Appellant on October 17, 2008. The order cancelling the evidentiary hearing was entered on October 20, 2008. Although it is possible that the Appellant did not receive notification of GMAC's motion until after the bankruptcy court entered its order to cancel the hearing, the Appellant did not file a motion to alter, amend, reconsider, or vacate the order cancelling the evidentiary hearing.

The Appellant has had numerous opportunities to appear before the court both at the trial and appellate level and defend this action. He has failed to avail himself of most of these opportunities. Despite the Appellant's protestations that he did not receive notice of hearings, the bankruptcy court confirmed his mailing address at the first evidentiary hearing and was assured that notice was afforded to the Appellant. In view of the above, the Panel finds that the Appellant was not deprived of his procedural right to due process as a result of the cancellation. Therefore, the bankruptcy court's order cancelling the evidentiary hearing is affirmed.

<u>Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4)</u>

The only issue properly preserved on appeal is whether the bankruptcy court erred in finding that the Appellant possessed the fraudulent intent necessary to render his debt to GMAC nondischargeable. The determination of whether Appellant possessed the requisite fraudulent intent is a question of fact, reviewed under the clearly erroneous standard. 11 U.S.C. § 523(a)(4) provides that "a discharge under [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Only the embezzlement provision of this section is applicable to this appeal. Embezzlement is defined as the "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1172-73 (6th Cir. 1996) (citation and internal quotation marks omitted). To establish embezzlement, a creditor must show that "he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Id.* at 1173 (citation omitted).

The district court concluded that the first two elements of embezzlement were met. Specifically, the district court held that "(1) GMAC entrusted Cline with its property, and (2) Cline put such property to a use for which it was not entrusted . . . ." *General Motors Acceptance Corp. v. Cline*, 2008 WL 2740777, at *6 (N. D. Ohio July 3, 2008). However, with respect to the third element, the district court held that the bankruptcy court had not addressed Cline's intent to defraud in its embezzlement analysis. *Id.* Therefore, the case was remanded to the bankruptcy court to determine "whether, in light of the court's factual findings, Cline possessed the level of intent needed to satisfy the third element of embezzlement." *Id.*

Upon remand, the mandate rule "'requires lower courts to adhere to the commands of a superior court.'" *Halbert v. Taunt* (*In re M.T.G., Inc.*), 291 B.R. 694, 701 (E.D. Mich. 2003) (citing *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 570 (6th Cir. 2001)). Therefore, "[u]pon remand of the case for further proceedings after a decision by the appellate court, the trial court must 'proceed in accordance with the mandate and the law of the case as established

on appeal.'" *Id.* The trial court must distinguish between issues that have been decided by the appellate court and therefore are not within the court's jurisdiction, from issues that have not been decided.[6] *Id.*

Moreover, upon remand a bankruptcy court may reverse its findings without considering any additional evidence. *See Watman v. Groman* (*In re Watman*), 458 F.3d 26, 35 (1st Cir. 2006) (holding that it was proper for the bankruptcy court on remand to consider the evidence and reverse its initial findings that the Appellant lacked the actual intent to hinder, delay, or defraud a judgment creditor under 11 U.S.C. § 727(a)(2)(A)) (citing *Ramey Constr. Co., Inc. v. The Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 318 (10th Cir. 1982) (concluding that the district court's reversal of its earlier denial of a motion to dismiss, on remand, complied with the mandate "for significantly new, more detailed findings" by supporting it's decision with more extensive findings of fact and conclusions of law); *William G. Roe & Co. v. Armour & Co.*, 414 F.2d 862, 865 (5th Cir. 1969) (holding that where the appellate court remanded the case to the trial court for more specific findings, "it was . . . within the court's power on remand to find that it had been wrong the first time and reverse itself.")); *see also Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 354 F.2d 459, 463 (2d Cir. 1965) (concluding that the district court, without receiving new evidence which differed from that which it considered initially, could reconsider its findings and reverse them).

In the instant case, the issue before the bankruptcy court on remand is limited to "whether, in light of the court's factual findings, Cline possessed the level of intent necessary to satisfy the third element of embezzlement." *General Motors Acceptance Corp. v. Cline*, 2008 WL 2740777, at *6 (N. D. Ohio July 3, 2008). The degree of fraud required for embezzlement is fraud in fact involving moral turpitude or intentional wrongdoing, for the purpose of permanently depriving another of his property. *Cash Am. Fin. Servs., Inc. v. Fox* (*In re Fox*), 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007).

---

[6]In this case, the district court has determined that the first element of embezzlement has been met, namely, that GMAC entrusted Cline with *its property*; and the district court's decision and order were not appealed by any of the parties. Therefore, the Appellant's argument that GMAC held no ownership interest in the vehicles has been decided by the district court and is not properly before this Panel on remand.

11

Since a debtor is unlikely to admit to acting with bad motives, fraudulent intent may be shown through circumstantial evidence. *Id.* at 116 (citing *WebMD Practice Servs., Inc. v. Sedlacek* (*In re Sedlacek*), 327 B.R. 872, 880-81 (Bankr. E.D. Tenn. 2005)). The court may be aided in its subjective analysis by the presence of traditional indicia of fraud - "e.g., suspicious timing of events, insolvency, transfers to family members or other insiders." *Automated Handling v. Knapik* (*In re Knapik*), 322 B.R. 311, 316 (Bankr. N.D. Ohio 2004) (citation omitted). In relying upon such indicia, however, the court should be cautious not to engage in factor counting. Instead, the circumstances surrounding the case should be reviewed and a determination made as to "whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *Rembert v. AT&T Univ. Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 282 (6th Cir. 1998) (discussing the matter in the context of an action brought under § 523(a)(2)) (citation and internal quotations omitted).

The bankruptcy court in this case reviewed the record and identified four indicia of fraud. First, the bankruptcy court found that vehicles were transferred to Appellant's friends and family members to settle antecedent debt, and transferred to affiliates of Mountain Chevrolet for far less than the value of the vehicles. Mountain Chevrolet received a total of $1,553,048 for all the vehicle transfers and remitted none of the proceeds to GMAC. The court concluded that the Appellant's fraud was his "representation, intention and conduct regarding compliance with the Floor Plan Agreements." *Universal Pontiac-Buick-GMC Truck, Inc. v. Routson* (*In re Routson*), 160 B.R. 595, 610 (Bankr. D. Minn. 1993) (holding that debtor's conduct constituted both misrepresentation and actual fraud, despite the fact that debtor "had every intention of paying his obligations" and believed, "however irrationally, that he would be able to pay them.").

Second, the bankruptcy court found that the vehicle transfers occurred shortly before Mountain Chevrolet filed for bankruptcy and none of the proceeds were paid to GMAC. All of these events occurred in a condensed time frame just prior to Mountain Chevrolet's bankruptcy filing, specifically between December 12, 2005 and February 8, 2006. Third, at the same time the vehicles were being transferred, the Appellant wrote checks from corporate accounts to repay loans made by

12

the Appellant's family members and friends even though the loans were not yet due. Specifically, Mountain Chevrolet transferred $470,024.37 to the Appellant's family members and friends, or to its corporate employees to repay loans that were not yet due. Finally, the bankruptcy court held that Mountain Chevrolet misrepresented information in three dealer jackets to indicate that money was paid at the time of vehicle delivery, when in fact none was paid.[7]

Based on the record, the bankruptcy court concluded that GMAC had proven the intent element of embezzlement. Consequently, the entire $2,486,699.77 debt owed by the Appellant to GMAC was nondischargeable in the Appellant's bankruptcy case. *See Hall v. Blanton* (*In re Blanton*), 149 B.R. 393 (Bankr. E.D. Va. 1992) (holding that the debtor's misappropriation of proceeds from the sales of automobiles gave rise to an inference of fraudulent intent which rendered a debt nondischargeable under § 523(a)(4)); *see also In re Routson*, 160 B.R. at 610 (court stated that a "floor plan arrangement was not a minor matter in the transaction between parties. It provides a substantial continuing source of credit, without which [the debtor] could not operate [his dealership]."); *Peavey Elec. Corp. v. Sinchak* (*In re Sinchak*), 109 B.R. 273 (Bankr. N.D. Ohio 1990) (where creditor had a floor plan financing arrangement with the debtor for the sale of musical instrument, and upon sale of the merchandise failed to pay proceeds to the creditor, the court held that elements necessary for embezzlement were present even where the debtor "deposited the proceeds of [the] sale in a business account and used these funds for business purposes" since "that use, however well-intentioned, was without the consent of the creditor.")

As previously noted, the Panel reviews the bankruptcy court's factual findings, including the issue of intent, under the clearly erroneous standard. The Panel will only set aside the bankruptcy court's finding if it is left with the definite and firm conviction that a mistake as been made. The Appellant argues that the bankruptcy court erred in finding that he had the requisite intent because Mountain Chevrolet's transfer of vehicles and the proceeds of vehicle sales were never intended to harm GMAC. According to the Appellant, he invested a substantial amount of money in repairs and

---

[7]A dealer jacket is a group of documents memorializing the sales transaction with regard to a specific vehicle. Three dealer jackets were admitted into evidence.

renovations to the dealership facility in hopes of making the business a success. The Appellant testified that he intended to repay GMAC with a $1 million refinanced mortgage loan that was scheduled to close in January 2006, but which did not close.

The Appellant asserts that he lacked the requisite fraudulent intent because his conduct was motivated by the survival of his business and was not intended to harm GMAC. The appellant cites to *Fox* and *Littleton* in support of this proposition. *See Cash Am. Fin. Serv., Inc.* (*In re Fox*), 370 B.R 104 (B.A.P. 6th Cir. 2007); *Transamerica Commercial Fin. Corp. v. Littleton* (*In re Littleton*), 942 F.2d 551 (9th Cir. 1991). However, these cases are factually distinguishable from the facts of the instant case. In an action brought by a lender in *Fox*, the court considered whether debtor's conduct as president of a collection agency, in failing to deposit collected debts into a separate trust account in violation of a collection agreement, constituted embezzlement under § 523(a)(4). The bankruptcy court held that the debtor lacked the fraudulent intent necessary to prove embezzlement, and relied *in part*, on evidence showing that the debtor's motivation was to keep the company viable. However, the bankruptcy court's conclusion, later affirmed by the Sixth Circuit Bankruptcy Appellate Panel, examined a number of factors and not simply the debtor's motivation. For example, the Panel noted that the record in the bankruptcy court established that the debtor acted openly, and did not attempt to conceal his failure to segregate proceeds into a separate trust account. *Id.* at 117. The debtor's testimony also established that debtor attempted to open a trust account and mistakenly believed he had a surety bond, further supporting his mistaken belief that he was complying with the terms of the collection agreement. *Id.* at 118. Moreover, the Panel held that the bankruptcy court's finding that *most* of the proceeds were used by the debtor to keep the company afloat, supported the bankruptcy court's conclusion that the debtor lacked the fraudulent intent to defraud the lender. *Id.*

In *Littleton*, an inventory financier brought an action against the debtors alleging that their conduct in depositing cash proceeds from sale of collateral inventory into a general business account and in failing to remit the proceeds from the corporation's sale of collateral, in violation of a security agreement, made the debt nondischargeable under §§ 523(a)(4) and (a)(6). The bankruptcy court concluded that debtors lacked the intent necessary for embezzlement and the Ninth Circuit

14

Bankruptcy Appellate Panel affirmed this holding stating that "*at all time*s the debtors acted with intent to benefit the corporation by securing financing so that the company could pay all its debts." *In re Littleton*, 106 B.R. 632, 638 (B.A.P. 9th Cir. 1989) (emphasis added). Subsequently, the Ninth Circuit Court of Appeals held that the bankruptcy court's ruling on intent was not clearly erroneous "given the bankruptcy court's finding that the debtors applied their entire effort and resources to make the business survive . . . ." *Transamerica Commercial Fin. Corp. v. Littleton* (*In re Littleton*)*,* 942 F.2d 551, 556 (9th Cir. 1991). Similar to *Fox*, the facts in *Littleton* are distinguishable from those of the instant case. For example, "[t]here was no evidence that the debtors used any of the corporate funds for their personal benefit, and there is no evidence that any other creditor was paid other than in the ordinary course of business in the month before [the] bankruptcy was filed." *In re Littleton*, 106 B.R. at 638-39. Moreover, there was evidence that the creditor in *Littleton* had knowledge of the "sold-out-of-trust" condition and "acquiesce[d], at least to some extent, in the conduct of the debtors . . . ." *Id.* at 639.

As noted by the district court in *Sherman v. Potapov*, whether or not a debtor is motivated by a desire to save his business is not dispositive on the issue of whether the debtor possesses the requisite fraudulent intent under embezzlement. 403 B.R. 151, 158 (D. Mass. 2009) ("any number of factors may be considered in deciding whether there are 'circumstances indicating fraud' and determining intent."); *see also Nat'l Banker of Commerce of Pine Bluff v. Hoffman* (*In re Hoffman*), 70 B.R 155, 163-64 (Bankr. W.D. Ark. 1986) (concluding that the debtor's "use of proceeds for business debts and continued farm operations is no defense to proof of embezzlement under 11 U.S.C. § 523(a)(4)."); *Applegate v. Shuler* (*In re Shuler*), 21 B.R. 643, 644 (Bankr. S.D. Idaho 1982) (where the court held that intent could be inferred from the circumstances even if "the intent is to deprive [the creditor] of the funds only temporarily and not permanently, as is often the situation in cases such as . . . the present action, does not eliminate the element of intent."); *Moonan v. Bevilacqua* (*In re Bevilacqua*), 53 B.R. 331, 334 (Bankr. S.D. N.Y. 1985) (holding that "[e]ven if [the debtor] intended to use the funds only temporarily, [the creditor] was deprived of his property and the resulting conversion constitutes embezzlement for purposes of section 523(a)(4).") (citation omitted).

In the present case, the Panel is not left with a definite and firm conviction that the bankruptcy court erred in its determination that the Appellant intended to harm GMAC. The Appellant did not present any corroborating evidence to substantiate the claims that he was attempting to refinance the debt owed by Mountain Chevrolet. Moreover, even if refinancing was possible, the Appellant never offered any explanation as to whether and how he intended to pay the remaining $1,486,699.77 of what was owed to GMAC. The Appellant also offered no evidence to substantiate his claim that he used the proceeds of the 130 vehicles transferred between December 12, 2005 and February 8, 2006 to make improvements to Mountain Chevrolet.

The facts of this case also show that the Appellant engaged in a concerted effort to liquidate a large amount of inventory in an abbreviated period of time, just prior to filing for bankruptcy. Although GMAC received none of the sales proceeds, the Appellant's friends and family members, and various insiders of Mountain Chevrolet, benefitted from the vehicle transfers by receiving payment on their obligations, even though not yet due. Additionally, the Appellant falsified sales documents in an effort to conceal his actions from GMAC. The Appellant testified that he knew GMAC was entitled to the proceeds of the vehicle sales. Nevertheless, the Appellant repeatedly failed to pay GMAC what it was due. Despite having been given the opportunity, the Appellant did not offer any evidence, testimonial or otherwise, to dispute the amount of damages claimed by GMAC.

Viewed in its totality, there was sufficient evidence presented to permit the bankruptcy court to infer that the Appellant intended to defraud GMAC. The bankruptcy court did not err in its legal conclusions. Furthermore, because the bankruptcy court's factual findings were not clearly erroneous. The Panel is not left with a definite and firm conviction that the bankruptcy court erred in determining that the Appellant did possess the requisite fraudulent intent. For these reasons, the Panel affirms the bankruptcy court's ruling.

16

**CONCLUSION**

For the reasons stated above, the Panel affirms the bankruptcy court's order finding that the Appellant has a nondischargeable debt to GMAC in the amount of $2,486,699.77. The debt is nondischargeable as embezzlement under 11 U.S.C. § 523(a)(4).